James M. Thompson, Co. Treas'r, &c.,

*vs.*

James R. Tinkcom.

The list or statement of personal property made out and delivered to the assessor by a person required by *ch.* 11 *of the General Statutes of the state* to list personal property for taxation, although it purports to be a true statement of all the property which such person is required to list, and is verified, and complies *in form* with the requirements of the statute, is not conclusive upon the assessor with reference to the property required to be listed by the person making such statement, but if by mistake or otherwise there has been an omission in such statement of any portion of the personal property which such person is required to list, the assessor may add such omitted property in his assessment, and embrace the same in his return to the county auditor.

*Section 27, of ch.* 11, *of the General Statutes*, embraces all cases of refusal, neglect or omission, fraudulently or otherwise, by any person to make a *true* statement of all the personal property which by the provisions of said chapter eleven such person is required to list for taxation, " either as owner or holder thereof, or as guardian, parent, husband, trustee, executor, administrator, receiver, accounting officer, partner, agent or factor."

The power of the assessor to return property which is taxable, but not embraced in the statement furnished to the assessor by a person required to make such statement, is not affected by the omission of the assessor to enter upon his return opposite the name of such person, "refused to list," "refused to swear," "absent," or "sick."

James M. Thompson, as treasurer of Blue Earth county, instituted proceedings under *sec.* 93, *ch.* 11, *Gen. Stat.* against James R. Tinkcom for the collection of certain taxes assessed to said Tinkcom upon personal property. The proper affidavit was filed, and the usual order to show cause was duly issued. Tinkcom duly appeared and filed his

answer. Upon the hearing the court below ordered a dismissal of the proceedings, and judgment was entered accordingly. Thompson appeals from such judgment to this court.

The questions arising in this case are fully presented in the opinion of the court.

JUDSON JONES for Appellant.

FRANKLIN H. WAITE for Respondent.

*By the Court*—McMILLAN, J.—This is a proceeding under *Section* 93 *of Ch.* 11, *Gen. Stat.*, by the county treasurer of Blue Earth county, to collect certain taxes assessed upon the personal property of the defendant for the year 1868.

The facts necessary to present the question involved in this case are as follows : The city assessor of the city of Mankato, on the 18th day of June, 1868, served upon the defendant a tax notice according to law requiring him to list his personal property liable to taxation. The defendant made out and verified upon his oath, the following list of items, namely :

One pleasure carriage, value,.................$15 00
One watch,................................. 15 00
Household goods, &c.,...................... 20 00

And having verified the truth and correctness of the statement in the manner required by the statute, returned and delivered the same to the assessor. The assessor, after the delivery of the list to him by the defendant, entered opposite to "The value of all credits, book accounts, and money loaned, after deducting therefrom all *bona fide* debts," $12,000; noting on the list the fact of the addition by him, and returned said list so changed, to the county auditor,

Thompson v. Tinkcom.

and also entered all said sums and items of personal property upon the assessment of said city of Mankato, for the year 1868, without the knowledge of defendant, until long after the same was done. The defendant, on the second day of September, 1868, appeared before the board of commissioners, organized to equalize and correct the assessment for the year 1868, and made complaint to them of the change of said list, and of said erroneous assessment, and asked to have said erroneous assessment corrected and abated, and the said board neglected to hear such application, or to take any action therein.

Whether or not the defendant was in truth the owner of any credits, book accounts, or money loaned, which were taxable at the time, the court which tried the cause did not find; the action having been dismissed by the court on the ground that the assessor had no authority to make the assessment in this manner.

The class of property assessed to the defendant and returned by the assessor is made expressly taxable by the statute. *Gen. Stat. secs.* 6, 7, *of ch.* 11. The presumption from the return regular upon its face and in the hands of the proper officer is, *prima facie*, that the tax is valid, and it is incumbent on the plaintiff to rebut this presumption; so far, therefore, as the validity of the tax depends upon the existence and ownership of the property upon which it is assessed, it must for the purposes of this case be assumed. *St. Peter's Church, Shakopee, vs. Commissioners of Scott Co.*, 12 *Minn.* 395; *O'Kane vs. Treat et al.* 25 *Ill.* 557. The sole question is, therefore, as to the power of the assessor to assess it in the manner he did; that is, whether the statement purporting to be a true statement of all the personal property of the defendant, and duly verified and complying in form with the requirements of the statutes, is conclusive

as to the assessor with reference to the property of the defendant, or whether if, by mistake or otherwise, there has been an omission in such statement of any portion of the personal property of the defendant, the assessor may add such omitted property in his assessment and embrace the same in his return to the county auditor. This is a question which admits of much argument on either side, and its solution is not entirely free from doubt. But after carefully examining the question the most satisfactory conclusion at which we can arrive, is that the assessor has the power, and is required to embrace in his return, any and all property taxable under the law, whether omitted by mistake or otherwise from the statement made by the individual required to list the same, or whether any statement was made or not.

The determination of the question depends more particularly upon the construction to be given to *section 27 of chap.* 11 above referred to which is as follows: "In every case where any person refuses or neglects to make out and deliver to the township assessor, a statement of the personal property, moneys and credits, investments in bonds, stocks, joint stock companies or otherwise, as provided by this chapter, or refuses or neglects to take and subscribe an oath as to the truth of such statement, or any part thereof, which he is by this chapter required to verify by his oath, or in case of the sickness or absence of such person, the assessor shall proceed to ascertain the number of each description of the several articles of personal property enumerated in the seventh section of this chapter, and the value thereof, the value of personal property subject to taxation, other than enumerated articles, and the value of the moneys and credits, investments in bonds, stocks, joint stock companies, or otherwise, *of which a statement has not been made to said assessor* as aforesaid, as the case may require; and to enable him so to

Thompson v. Tinkcom.

do he is hereby authorized to examine on oath any person whom he may suppose has a knowledge of the articles or value of the personal property, moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, which the person so refusing, or absent or sick, was required to list."

We think the better construction of this section is that by the use of the terms "refuses or neglects" in the first line of the section, it embraces all cases of refusal, neglect or omission, fraudulent, willful, intentional or otherwise, by any person to make a *true* statement of *all* the personal property exempt, as well as unexempt, which by the provisions of *chapter eleven of the General Statutes* such person is required to list for taxation, either as owner or holder thereof, or as guardian, parent, husband, trustee, executor, administrator, receiver, accounting officer, partner, agent or factor. We shall state as briefly as we can our reasons for this construction.

It is evident from section one of the act, as well as from the spirit and tenor of the whole law, that it was the intention to subject to taxation all the property in the state not expressly exempted by the act, and for that purpose that all such property should be entered in the list of taxable property. The original source from which this list must be made, is the return of the assessors in the townships, wards or cities of the respective counties, either as made by the assessors, or as corrected by the authorized municipal officers of the county.

Section 6 of the act provides, that each person required by this chapter to list property, shall list all the personal property in his possession or under his control at the time the notice was given him by the assessor to make out such statement, and which by the provisions of this chapter he is

required to list for taxation, either as owner or holder thereof, or in any of the various capacities specified in the section, whether such property is exempt from taxation or not, and such statement must be verified by his oath: and section 7 provides that such statement shall truly and distinctly set forth the items of property specifically enumerated therein. The statement contemplated and required by the act must be true, it must be verified, and it must embrace all the personal property which the individual is required by the act in any capacity to list. It may be true, and not be verified, or it may be verified, and not be true; there may be a partial statement made, or there may be no attempt to make a statement. If there is an entire omission to make any statement, or if the statement is defective in any of its essential requisites, there is not a statement of the personal property as provided by this chapter, " within the meaning of the section under consideration.

If *section* 29, which requires the township assessor in his return to the auditor, to "enter separately in appropriate columns opposite such name, * * the aggregate value of the several species of personal property enumerated in the seventh section of this chapter, as attested by the person required to list the same, *or as determined by the assessor*," does not in terms authorize the assessor to embrace in his return any property omitted by a person required to list the same, it at least harmonizes with the construction we have given to *section* 27.

But further, it is very evident that the statement of property required to be made and verified by the property holder, is not absolutely conclusive against the municipal authorities; for by *section* 47, the auditor is required, at any time before the final settlement with the treasurer, to correct the return of the assessor, if he has reason to believe

Thompson v. Tinkcom.

that any false statement of property has been given by any person to the assessor, or "that the assessor has not returned the full amount *required to be listed* in his ward or township, or has omitted or made any erroneous return of any property, moneys, credits, investments in bonds, joint stock companies, or otherwise, which are by law subject to taxation." And by *section* 82, the county board of equalization has power, in correcting the returns of the assessor, to add to or deduct from the valuation of the personal property or moneys or credits of any person returned by the assessor, or which may have been omitted by him, or to add other items upon such evidence as is satisfactory to such board, whether such return is made upon the oath of such person, or upon the valuation of the assessor.

The manifest intention of these sections is to declare that the oath of an interested party shall not be conclusive of the correctness of the statement; but that fraud or mistake therein shall if discovered in proper time be corrected. The *Champaign County Bank vs. Smith*, 7 *Ohio St. R.* 49.

To correct is to make right. The correction of the assessor's return, by the auditor or board of equalization, therefore, is to make it what it ought to have been made by the assessors. If after the official return is made out under oath by the assessor, and delivered to the auditor, the oath of the party interested is not conclusive, but the return may be corrected against the oath, there is much more reason, if property is omitted from the statement by fraud or mistake, why the assessor, if the fraud or mistake is discovered before completing his return, should be permitted, nay required, to make his return what it ought to be, by embracing in it the property omitted from the statement, notwithstanding the oath of the party interested. The provisions in *sections* 47, and 82, that the auditor and board of equali-

zation shall make these corrections only upon evidence, and preserve such evidence, so far from conflictng with the position that the assessor may correct the statement of the property holder, tends to confirm the position, for the presumption of law is, that the return of the assessor, who is an officer of the law, duly sworn, is correct, and when returned to the auditor it is an official record, which can only be changed by authority of law, and it is but reasonable that a change under such circumstances, if allowed, should be upon evidence to be preserved; not that the statement was conclusive, but that the official return was presumptively correct.

But when the statute does not expressly or by implication make the oath of the party conclusive, it is merely a step in the proceedings to enable the assessor to make a complete return of all the property in his district, and in the absence of any express provision affecting the question, the presumption is in favor of the correctness of the return of the officer.

The oath of the assessor prescribed by section 32, of the chapter referred to, and attached to the return, shows also that the oath of the party is not conclusive as to the assessor, but that he must include in his return any property omitted from the statement.

The concluding language of the oath, having italicized a portion ourselves for convenience, is, "that in no case have I knowingly omitted to demand of any person of whom by said chapter I was required to make such demand, a statement of the description and value of personal property, or of the amount of moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, which he was required to list, or *in any way connived at any violation or evasion* of any of the requirements of said chapter in relation *to the listing* or valuation of property, moneys, credits,

investments in bonds, stocks, joint stock companies, or otherwise, of any kind for taxation." If the assessor is bound to return all the property in his district, it would certainly be a violation of this oath to return only the property embraced in the statement of a tax payer, if at the same time he had knowledge of the falsity or incorrectness of such statement, and of the existence of other taxable personal property in his district belonging to the person making such statement.

No hardship can result from this view of the law, since the tax payer may apply to the board of equalization if he is aggrieved by the return of the assessor and have his remedy; (*ch.* 11, *sec.* 82,) while any other construction would open the door to great frauds upon the revenue of the state and counties. We do not deem it necessary to refer to other provisions of this chapter which support the view we have taken.

It is to be observed that in Massachusetts, by express provision of statute, the assessors are required to receive as true the list brought in by such individual, unless he refuses to answer on oath all necessary inquiries as to the nature and amount of his property, *Gen. Stat. of Mass.*, (1860,) *ch.* 11, *sec.* 25. The decisions of that state, of course, are not, therefore, applicable here, where no such provision exists. The provision in section 29, of the statute of our state requiring the assessor to enter upon his return in an appropriate column opposite the name of any person refusing to list his property, the words "refused to list," was, we think, intended, primarily at least, to enable the county auditor in such case to impose the penalty prescribed in section 47, of the same chapter, which is now repealed. But however that may be, we are clearly of opinion that so far as the power of the assessor to return property not embraced in a

statement is concerned, it is not affected by the omission of the assessor to make such entry.

The judgment of the court below is reversed and a new. trial awarded.