## GIDEON MONCRIEF v. MAXA MONCRIEF ET AL.

1. *Effect of Devise as to Creditors.*—The devisee of land takes it subject to the payment of the debts of the testator, and it remains thus subject even in the hands of an innocent purchaser from the devisee.

2. *Order to sell Devised Lands.*—It is the duty of an executor to apply to the proper court for an order for the sale of lands to pay debts when necessary, and such an order is properly granted on the petition of the executor, whenever it would be granted on the petition of creditors.

3. *Nature of Executor's Relation.*—An executor is a trustee, invested with the power, in a proper case, and on the order of the proper court, to convert real estate into money for the benefit of the creditors of the estate.

4. *Devastivit.*—If an executor is chargeable with a *devastivit* by collusion with the heir, or devisee, still, as between the heir or devisee and a creditor, the loss must fall on the executor, and not on the creditor. And even if the creditor might maintain an action for *devastavit* on the executor's bond, he is not obliged to resort to that remedy for the recovery of his debt.

5. *Case Overruled.*—*Pell* v. *Farquar*, 3 Blackf. 331, is overruled as to the point that if an administrator assents to a sale of land by heirs, he cannot afterwards make such land assets to pay debts.

Filed May 13, 1881.

Appeal from Jennings Circuit Court.

T. C. Batchelor, for appellant, cited *Beach* v. *Mitchell*, 14 Ind. 397; *Carter* v. *Harris*, 16 Ind. 387; *Ray* v. *McMortry*, 20 Ind. 307; *T. H., A. & St. L. R. R. Co.* v. *Norman*, 22 Ind. 63; *Cox* v. *Vickers*, 35 Ind. 27; *Fletcher* v. *Holmes*, 25 Ind. 458, as to the nature of an estoppel. *Nettleton* v. *Dixon*, 2 Ind. 446, to the effect that the loss occasioned by the wrong doing of an administrator falls on the heir, as between the heir and a creditor. *Weyer, administrator,* v. *National Bank*, 57 Ind. 198, that a purchaser buys real estate subject to creditors' claims. *Pell* v. *Farquar et al.* 3 Blackf. 331, distinguished; *Kaufman* v. *Bott*, 29 Ind. 521, as to reversing, on overruling motion for a new trial, where the evidence is all in the record.

George W. Swarthout, for appellees, cited Williams on Executors (6 Am. ed.), 1795; Redfield on Wills, pt. 2, p. 867, as to duty of executor to first exhaust all personal estate before resorting to lands to pay debts. R. S. §31, p. 494, as to duty to inventory; R. S. vol. 2, §42, p. 495, as to estoppel by failure in duty; Wash.

on Real Prop. p. 456, as to estoppel *in pais;* and *Pell* v. *Farquar et al.* 3 Blackf. 331; 2 Redfield on Wills, 560, 563 and notes; 2 Redfield, 556; 2 Williams, 1,482, as to whether an executor can compel a refunding after the payment of a legacy; Williams, p. 1477, note P, to the effect that assent to possession of the heir vests the property in the heir.

Opinion of the court by Mr. Justice Worden.

This was a petition filed by the appellant as executor of the last will and testament of Caleb Moncrief, deceased, in the court below, for an order for the sale of certain real estate for the payment of the debts of the deceased.

It is stated in the petition that the testator died the owner of certain real estate described, situate in Jennings county; that he left no personal estate whatever; that he owed debts on which there was due at the time of filing the petition about the sum of three hundred dollars, together with the costs of administration, which will probably amount to one hundred dollars.

The will of the testator contains the following clauses. *"First.* All my just debts are to be paid. *Second.* I give and bequeath to my beloved wife, Jane Moncrief, all my estate, real and personal, of which I may die seized or possessed, during her natural life. *Third.* After her death I give and bequeath all my real and personal estate to my son, Maxa Moncrief."

The testator died, as is alleged, in January, 1870. The following allegations are found in the petition:

" That, on the — day of October, 1870, the said Maxa Moncrief sold and conveyed to the defendant, George W. Swarthout, all of the real estate above described, which was all the real estate left by said decedent, the said Swarthout at the time well knowing that the debts of said decedent had not been paid, and that there was no personal property belonging to said estate out of which to pay the same; that, at the time of said conveyance to said George W. Swarthout, the estate of said Caleb Moncrief was, and still is, indebted in the sum of $300 and more; that, to pay said indebtedness, it had become necessary to sell a portion or all of said real estate," etc.

Swarthout and his wife were made defendants to the petition, and the fifth paragraph of their answer was as follows:

"For fifth paragraph of amended answer, defendants say that plaintiff ought not to have his order of sale, as prayed for in his petition; in this, that plaintiff having paid the legacies mentioned in the will of the testator to the sole heir and legatee of the same, Maxa Moncrief, by delivering up to him and permitting him to take possession of the real estate in plaintiff's petition mentioned, and permitting him to treat and use the same as his own, whereby said heir and sole legatee had a right to sell and convey the same; defendants aver that they purchased said real estate from said heir and legatee, as they had a right do, in good faith, without any knowledge that there were any debts unpaid against said estate, they paid a full valuation therefor, to-wit: $5,000; that part of the purchase money was in property, to-wit: the undivided half of a large steam flouring mill and dwelling house, together with the land on which the same is situated, in Geneva township, Jennings county, Indiana, worth $4,000, which property said heir and sole legatee was the owner and in possession of at the commencement of this suit, and out of which this plaintiff could have made the money to pay all the debts against the estate, but plaintiff wholly failed and neglected so to do; that soon after said sale and purchase of the mill aforesaid this plaintiff made an agreement with the heir and legatee to go into partnership with him in running and occupying the mill for their mutual benefit; but this plaintiff having failed to get his means or money together to do so, plaintiff arranged with one William G. Stratton to go into partnership with the heir and sole legatee, Maxa Moncrief, in running and occupying said mill until the plaintiff could get his money collected together to do so; that the remaining $1,000 was paid as follows: $463 paid off a mortgage to the school fund against said land; the remainder was divided into three equal payments in one, two and three years, defendant giving his note therefor.

"The first payment was paid to Maxa Moncrief, the heir and legatee aforesaid and payee of the notes. The remaining two were assigned to one William G. Stratton, and by him to one Hiram T. Read, a creditor, for a large amount, of Maxa Moncrief, heir, etc., aforesaid, for the purpose of preventing this defendant from buying up any offsets against said notes in the hands of the payee. All of which facts this plaintiff well knew and consented to. That defen-

dant was asked by said Read if said notes were all right. Defendants told him they were, but at the same time told him he would not pay them until the debts against the estate of Caleb Moncrief were settled. That at the       term of this court, and before said notes were paid to said Read, defendant asked this plaintiff if he required defendant to pay those notes to him as assets to pay debts. He answered that he did not need the money to pay debts against said estate. This plaintiff then and there answered defendant that he did not, that he had the debts all arranged and that defendant could pay the money to said Read; all of which facts this plaintiff well knew. Defendants aver that plaintiff connived with the heir and sole legatee, Maxa Moncrief, to convert and appropriate the property, both personal and real estate, belonging to said estate to his own, (use?) as against the creditors of said estate.

"Wherefore, in consequence of all of which facts and negligence on the part of the plaintiff, defendants ask judgment that plaintiff do not have his order of sale, as prayed for in his petition, and that defendants have judgment for costs."

A demurrer to this paragraph, for want of sufficient facts, was filed by the plaintiff and overruled. Exception.

Issue, trial by the court, finding and judgment for the defendants.

The correctness of the ruling on the demurrer above mentioned is questioned by an assignment of error.

We are of opinion that the demurrer to the fifth paragraph of answer should have been sustained.

The devisee of the land, and the purchaser from him, Swarthout, took it subject to the payment of the debts of the testator. *Weakley* v. *Conradt*, 56 Ind. 430.

There is nothing in the paragraph of answer that estops the creditors of the testator from instituting proceedings for an order for a sale of the land by the executor for the payment of their debts. 2 R. S. 1876, p. 523, § 78. There is, therefore, nothing that estops the executor from procuring such order of sale.

It would be quite incongruous to hold that the executor could be authorized to sell on the petition of creditors, and not on his own petition. It is his duty to apply to the proper court for an order for the sale of land to pay debts, when necessary; and it is proper

to order a sale on his petition, whenever it would be on the petition of creditors.

The executor is a trustee, invested with the power, in a proper case and on the order of the proper court, to convert real estate into money for the benefit of the creditors of the estate ; and the acts charged in the paragraph of answer, while they might estop him were the rights of creditors not affected, cannot estop him as executor to do and perform such duties as may be necessary and proper for the payment of the debts of the estate.

It is alleged in the paragraph, among other things, that " plaintiff connived with the heir and sole legatee, Maxa Moncrief, to con-, vert and appropriate the property, both personal and real estate, belonging to said estate, to his own use as against the creditors of said estate."

If this allegation means that the plaintiff was guilty of a *devastavit*, still, as between the heir or devisee and the creditor, the loss must fall on the former and not the latter. *Nettleton* v. *Dixon*, 2 Ind. 446.

The creditors of the estate might, perhaps, maintain an action for a *devastavit* against the executor and his sureties upon his bond, but they cannot be driven to that remedy for the collection of their debts.

Our attention has been called to the case of *Pell* v. *Farquar*, 3 Blackf. 331, in which it was said that, " if an administrator consent to the sale, by heirs, of the real estate of the intestate, he divests himself of any right which he might otherwise have had under the statute, to make such estate assets, in case of a deficiency of the personal property."

This proposition, we are satisfied, is founded in error, inasmuch as the consent of the administrator to the sale of the land by the heir could not divest the creditor, in the case supposed, of his right to have his debt made out of the land ; and this right may be worked out by an order for the sale of the land, made on the petition of the administrator as well as on the petition of the creditor. The case above cited, upon the point stated, must be overruled.

The judgment below is reversed, with costs, and the cause remanded, with instructions to the court below to sustain the demurrer to the fifth paragraph of answer.