Scherer v. Ingerman, Administrator.

No. 13,287.

SCHERER v. INGERMAN, ADMINISTRATOR.

DECEDENTS' ESTATES.—*Proceeding to Sell Real Estate.*—*Statute of Limitations.*—The fifteen years' statute of limitations (section 294, R. S. 1881) is applicable to a proceeding by an administrator for the sale of real estate to pay claims against the estate of his decedent.

SAME.—*Allowance.*—*Accrual of Cause of Action.*—Where a claim was filed in 1868, and allowed in 1869, but the judgment was subsequently reversed on appeal, and the claim finally allowed in 1872, it is held, under the facts of this case, that the cause of action accrued in 1872, and a proceeding, begun in 1886, for the sale of real estate to pay the allowance, is not barred.

SAME.—*Laches.*—*Equitable Estoppel.*—*Statute of Limitations.*—It is only where the laches of a party are of such a character as to work an equitable estoppel, that his right of action will be limited to a less period than that fixed by the statute of limitations.

SAME.—*Quitclaim Deed.*—*Estoppel.*—The fact that during the pendency of his claim against an estate, a creditor joins his wife, an heir, in a quitclaim deed to her interest in the land of the decedent, will not estop the creditor or the administrator from maintaining a proceeding against a remote grantee of the purchaser for the sale of the land to pay the claim, after the personal estate has been wasted without the fault of the creditor.

SAME.—*Purchase of Land from Heir.*—*Notice of Allowance Against Estate.*—Purchasers of real estate from the heirs of a decedent are bound to take notice of the record of allowances against the estate, and to know that the land, upon failure of personal assets, is liable to sale.

SAME.—*Defences to Proceeding to Sell Real Estate.*—*Payment.*—*Set-Off.*—*Former Adjudication.*—In a proceeding by an administrator for the sale of land, held by a remote grantee of the heirs, to pay a claim, the facts that the defences of payment and set-off were set up by a former administrator, who was an heir, against the allowance of the claim, and that the other heirs had requested that such defences be made and were witnesses, do not render the judgment allowing the claim a bar to such defences in the present proceeding.

SAME.—*Defence by Heirs and Grantees.*—Neither the act of 1875 (2 R. S. 1876, p. 517) nor section 2326, R. S. 1881, denies to the heirs or their grantees, in a proceeding to sell land to pay a claim against a decedent's estate, the right to defend against the claim upon its merits, notwithstanding it may have been allowed.

SAME.—*Civil Action.*—*Change of Judge.*—A proceeding by an administrator for the sale of real estate is a civil action in such sense that a party may have a change of judge upon a proper application.

Scherer *v.* Ingerman, Administrator.

SAME.—*Witness.—Disqualification.—Party to Issue.*—A person to be disqualified as a witness, under sections 498 and 499, R. S. 1881, must be a party to the issue to be tried, and not merely a party to the record; if a party to the record only, he must be interested in the issue in favor of the party calling him.

SAME.—*Husband and Wife.*—Where a husband is incompetent as a witness under sections 498 and 499, his wife is also incompetent, and *vice versa.*

CHANGE OF JUDGE.—*Motion.—Vacation.—Notice.*—Where a motion for a change of judge is made in open court, and there acted upon, the mere fact that the affidavit was filed in vacation does not bring the matter within section 417, R. S. 1881, requiring notice.

From the Hamilton Circuit Court.

*T. J. Kane* and *T. P. Davis,* for appellant.

*F. M. Trissal, B. L. Smith, W. J. Henley, A. F. Shirts* and *G. Shirts,* for appellee.

ZOLLARS, J.—Appellee, as the administrator *de bonis non* of the estate of William Bishop, deceased, on the 22d day of March, 1886, filed his petition asking for the sale of real estate to make assets with which to pay a claim in favor of one Abel Welsh, and the costs resulting from the litigation thereof by the former administrator, which claim was allowed by the judgment of the court on the 28th day of May, 1872.

It is averred in the petition, that the personal estate which came into the hands of the former administrator was wasted by him, or applied in the payment of preferred claims; that no personal estate has come into the hands of appellee; that the former administrator, and the sureties on his bond, are insolvent; that the land in question is the only property left by the decedent from which money can be derived with which to pay said debt against the estate; that while the Welsh claim was pending for allowance, and was being litigated by the former administrator, a part of the heirs of the decedent, by quitclaim deed, conveyed the land to a remote grantor of appellant, through whom he now claims title to the land as owner.

The court below sustained a demurrer to several paragraphs of appellant's answer.

The discussion by his counsel is confined to the third and tenth paragraphs. As the tenth paragraph contains all that is alleged in the third, it will be sufficient to state, briefly, the contents of that paragraph.

It is therein averred, that William Bishop died intestate in June, 1867; that a few days thereafter one Ira Bishop was appointed administrator of his estate; that there came into his hands personal estate more than sufficient to pay all the debts and costs against the estate; that the Welsh claim was filed in 1868, and allowed by the judgment of the court in 1869; that that judgment was reversed by the Supreme Court, and the claim again allowed by the court below in 1872, as alleged in appellee's petition; that in 1868 the heirs of the decedent, among whom was the wife of Welsh, by a deed of conveyance in which Welsh joined with his wife, conveyed the land to a remote grantor of appellant, for a full, fair, and adequate consideration, which was paid to the wife of Welsh and the other heirs; that in 1883, more than fifteen years after the filing of the Welsh claim, and the placing of it upon the issue docket, and more than ten years after it was finally allowed, appellant purchased the land and paid therefor a valuable consideration, in good faith, and without any knowledge of the Welsh claim, or any other unpaid claim against the estate; that the grantees of the heirs of the decedent have held the sole, continuous, and adverse possession of the land for more than eighteen years prior to the filing of appellee's petition, claiming to be the exclusive owners thereof in fee simple, and free from all claims in favor of the administrator or creditors; that neither the administrator nor creditors, prior to the filing of the petition herein, ever claimed that the land was liable for the payment of the Welsh claim, or any part thereof, but, on the contrary, said Welsh, with full knowledge of all the facts, elected to and did prosecute to final judgment an action against the former administrator and his sureties; that this proceeding is prosecuted wholly

in the interest of Welsh, and that all other claims and costs against the estate have been fully paid.

It is claimed by appellant, that the facts thus set up show that the proceeding is barred by the fifteen years' statute of limitations, and that both Welsh and the administrator are estopped from prosecuting this action.

It was held in the case of *Cole* v. *Lafontaine*, 84 Ind. 446, that section 212 of the code of 1852, 2 G. & H. 160, 2 R. S. 1876, p. 124, R. S. 1881, section 294, is applicable to proceedings of this character, and that the expiration of fifteen years from the time the cause of action accrues will bar such a proceeding.

It is contended by counsel for appellant, that the cause of action here accrued not later than one year after the administrator was appointed in 1867, or, at furthest, not later than 1869, when the Welsh claim was first allowed by the court. On the other hand, it is contended by counsel for appellee, that the cause of action did not accrue until the final allowance of the claim in 1872.

We feel constrained to adopt the latter view, as applied to this case. The law in force at the time contemplated a final settlement of the estate at the end of a year from the appointment of the administrator, except where there were uncollected claims due the estate, or pending and undisposed of claims against the estate.

In such case, the estate could not be finally settled at the end of the year. 2 G. & H., p. 517; 2 R. S. 1876, p. 535; R. S. 1881, section 2393, *et seq.*

It was also provided, that whenever the administrator should discover that the personal estate was insufficient to pay the liabilities, the court should order the sale of real estate, upon the petition of the administrator, stating the amount of the personal estate that had come to his hands, the amount of debts outstanding against the estate, and the insufficiency of the personal estate to pay them.

A like application could be made by a creditor. 2 G. &

H., pp. 506, 508; 2 R. S. 1876, pp. 519, 523; R. S. 1881, sections 2336, 2338, 2342.

According to both the petition and the answer here, the Welsh claim was in litigation until 1872, when it was finally allowed by the court. And, according to the answer, that was the only claim against the estate that was unpaid. According to the answer, also, the personal assets in the hands of the former administrator were sufficient to pay all the claims and costs against the estate. If they were thus sufficient, it was not known by that administrator, nor by the creditor Welsh, that there was any necessity for resorting to the land until after those assets were wasted. When that was does not appear. And if, according to the answer, all claims and costs against the estate, except the Welsh claim, were paid from the personal assets, it was not, and could not be known that it would be necessary to resort to the real estate until that claim was finally allowed. The administrator was litigating that claim, and if he had been successful in defeating it, and there were no other claims or costs against the estate, as alleged in the answer, there would have been no necessity for resorting to the real estate.

The creditor, Welsh, had no right to apply for a sale of the real estate until his claim was finally allowed in 1872. Until that claim was allowed, it was not known that he was, in fact, a creditor.

Upon the pleadings before us, it must be held that both as to Welsh and the administrator, the cause of action accrued upon the allowance of the Welsh claim in 1872. That was not fifteen years before this proceeding was commenced.

In some of the States, where there are no statutes of limitations applicable to a proceeding of this character, it has been held that it must be commenced within a reasonable time after the discovery of the insufficiency of the personal estate, and that neither the administrator nor the creditor may resort to the real estate if they have been guilty of laches which may deleteriously affect the rights of the heirs or their

grantees in and to the real estate. *Ferguson* v. *Broome*, 1 Bradf. 10; *Estate of Crosby*, 55 Cal. 574; *McCrary* v. *Tasker*, 41 Iowa, 255; *Wolf* v. *Ogden*, 66 Ill. 224; *In the matter of the Estate of Godfrey*, 4 Mich. 308; *Campau* v. *Gillett*, 1 Mich. (annotated) 416.

But, as we have seen, it has been held that our statute, limiting the right to prosecute certain actions to fifteen years from the time the cause of action accrues, applies to proceedings of this character.

The drift of the holdings has been, too, that where limitations are fixed by the statute, parties have, under all circumstances, until the expiration of the time thus fixed in which to bring their actions. See *Potter* v. *Smith*, 36 Ind. 231; *Harper* v. *Terry*, 70 Ind. 264.

There may be cases of statutory proceedings, or cases of purely equitable cognizance, where the laches of a party may be of such a character, and under such circumstances, as will bar his right to prosecute his action, in less time than that fixed by the statute of limitations. But that is only in cases where the laches are of such a character and under such circumstances as to work an equitable estoppel. *State, ex rel.*, v. *Gordon*, 87 Ind. 171; *City of Logansport* v. *Uhl*, 99 Ind. 531 (50 Am. R. 109); *Earle* v. *Earle*, 91 Ind. 27.

We can not say that in the case before us the administrator or the creditor, Welsh, has been guilty of laches of such a character, and under such circumstances, as to work an equitable estoppel against either.

It is true, that from the time the claim was allowed in May, 1872,-until this proceeding was commenced in March, 1886, no steps were taken to reach the real estate, but we are informed by the answer, that during that time, Welsh, in an effort to collect the amount of his allowance, prosecuted to final judgment an action against the former administrator and the sureties on his bond.

It was not shown when that action was commenced, nor

when it terminated, nor how much time may have been consumed in an effort to collect the judgment. For aught that appears, that action may have been pending at the time appellant purchased the land. It was proper and right for Welsh to make an effort to collect from the former, and delinquent administrator, before resorting to the real estate. The personal estate was the primary fund for the payment of the debts against the estate, and if that was wasted by the administrator, as alleged, it was the proper thing to make him and the sureties on his bond respond for the amount of it, if possible, before selling the real estate.

Of the delay caused by the efforts of Welsh in that regard, neither the heirs nor appellant, as their remote grantee, can complain.

His efforts, it appears, were fruitless, because of the insolvency of the former administrator and his sureties.

Appellant's counsel say in their brief, that they call the attention of the court, as a matter of information only, to the fact that the litigation growing out of the Welsh claim has been in this court four different times.

There is nothing in the cases of *Bishop* v. *State, ex rel.*, 83 Ind. 67, and *Lord* v. *Bishop*, 101 Ind. 334, to show that they involved the Welsh claim.

They do, however, strengthen the statements in the pleadings here, that the former administrator and his sureties are, and for some years have been, insolvent.

They show further, that the efforts of Lord, as a creditor of the estate of the decedent, to make the former administrator respond for his waste of the personal estate, was not terminated until the last decision by this court, if then, rendered in April, 1885.

They indicate, too, that Welsh, the claimant interested here, was one of the sureties on the bond of Ira Bishop, the delinquent administrator. If that is in fact so, it may be a very serious obstacle in the way of an order for a sale of the

real estate to satisfy his claim. That he was such surety, however, is not shown by the record before us.

It is averred in the petition, that while the Welsh claim was pending against the estate of the decedent, his heirs conveyed the land by quitclaim deed to a grantor of appellant.

That is not denied in appellant's answer; but, by way of estoppel, it is alleged in the answer that the heirs of the decedent, in 1868, for a full consideration paid to them, sold and conveyed the land to a remote grantor of appellant; that the wife of Welsh was one of the heirs, and that he joined with her in the deed; and that, in 1883, appellant, without any knowledge of the Welsh claim, purchased the land and paid value.

We do not think that the facts thus pleaded are sufficient to estop either the present administrator or Welsh from prosecuting this proceeding. No positive wrong is charged upon Welsh. He was not the owner of the land. He joined in a quitclaim deed simply as husband of one of the heirs who owned the land. His wife did not own all the land, but simply her share with the several heirs. Welsh's claim was pending at the time. The purchaser might have learned that fact by the exercise of diligence; indeed, there is no averment that he did not have knowledge. At the time, it was not known that the personal assets, which were sufficient to pay the debts, would be wasted by the administrator.

Appellant had not actual knowledge of the allowance in favor of Welsh when he purchased the land in 1883. But Welsh neither made any representation to him, nor concealed anything from him. They had no dealings nor communications in relation to the land. At the time appellant purchased, the Welsh claim was in judgment in the way of an allowance against the estate. Such allowances are matters of record.

Appellant was bound to take notice of that record, and bound to know that upon failure of personal assets, the land might be sold to pay the allowances and costs against the

estate. Baker v. Griffitt, 83 Ind. 411; Moncrief v. Moncrief, 73 Ind. 587.

Without further elaboration, our conclusion is that the court below did not err in sustaining the demurrer to the third and tenth paragraphs of appellant's answer.

Appellant assigns as error the overruling of his demurrer to the fifth paragraph of appellee's reply to the fourth, fifth and sixth paragraphs of the answer.

Appellee assigns as cross errors the overruling of his demurrer to said paragraphs of answer, and the sustaining of appellant's demurrer to the second, third and fourth paragraphs of the reply to said answers.

It must be remembered that the only debts against the estate, mentioned in appellee's petition for the sale of the land, is the allowance in favor of Welsh.

The fourth paragraph of answer is, in substance, that the allowance in favor of Welsh was based upon an account, the items of which are set out, and that they and each of them were paid before the claim was filed against the estate.

The fifth paragraph of the answer is, in substance, that prior to and at the time of filing his claim against the estate, Welsh was indebted to the estate, giving the items, in an amount equal to his claim, which should be set off against that claim.

The substance of the sixth answer is, that Welsh's claim was for services rendered to William Bishop (decedent) in his lifetime, and that for them he had been fully compensated by the use of said Bishop's farm.

Briefly stated, the second paragraph of appellee's reply to the above answers is, that the former administrator was a son and heir at law of the decedent; that as such administrator and representative of all the heirs, he interposed against the claim of Welsh all of the defences set up in said answers, and that they were all adjudicated in the litigation which resulted in the allowance of that claim.

The third reply is, that the former administrator, a son

and heir at law of the decedent, for himself and at the special request of all the other heirs, in his capacity of administrator, and as the agent of said heirs, interposed the defences set up in the above paragraphs of answer against the claims of Welsh, and that those defences were adjudicated in the allowance of the claim by the court.

The fourth, in brief, is, that the former administrator, an heir at law of the decedent, and four of the other heirs, were all present in court upon the trial of the Welsh claim; that they testified as witnesses upon the trial; that the claim was resisted under their direction, they having full opportunity to make any and all defences that existed against the claim, and that a defence was made for them by the administrator.

The conclusion of that paragraph of reply is, that as to five-twelfths of the real estate, appellant ought not to be permitted to prove the facts set up in the answers.

These replies indicate the position of appellee's counsel. Their contention is, that the answers are bad, and the replies good, for the reason that the allowance of the Welsh claim by the court is conclusive as against the heirs, and that, therefore, no defence can now be made by them to that claim.

The argument of counsel in support of their position, while able and cogent, is met by the case of *Cole* v. *Lafontaine*, 84 Ind. 446, and the cases there cited.

We have re-examined the cases and authorities there cited, and find that they support to the fullest extent our conclusion in that case. The allegations in the replies, that the administrator was an heir of the decedent, that he was requested by the other heirs to resist the Welsh claim, that in doing so he represented the other heirs, and that some of them were present as witnesses upon the trial of that claim, are not sufficient to take the case out of the ruling in the case of *Cole* v. *Lafontaine, supra,* and the authorities there cited.

So far as the other heirs were concerned, the defence by the administrator was in his capacity as administrator. In that

capacity he, in some sense, represented the heirs, as all administrators do in resisting claims against the estate. They had an interest in preserving the personal estate, and hence an interest in defeating the claim which, if allowed and paid, would so far reduce the amount of that estate. And the fact that they were present as witnesses, and assisting in the defence against the claim, did not make them parties, nor, according to the authorities, make the judgment rendered final and conclusive against them or their grantee, in a proceeding to sell the real estate.

According to the authorities, the judgment on the claim is conclusive as to the personal estate ; is *prima facie* sufficient to charge the realty, but not conclusive against the heirs or their grantee.

Upon an application by the administrator, or by a creditor, to have the land sold for the payment of a claim, whether allowed or not, the heirs and their grantees are entitled to defend against the claim, relying upon payment, the statute of limitations, etc., and to have a trial of it upon its merits. See, also, Willard Executors, p. 335. ·

In some of the cases it has been held, that where, in a proceeding like this, a defence is being made to the claim by the heirs, it is the duty of the administrator to notify the claimant, in order that he may protect his claim, and that, for failure to do so, the administrator is liable to the claimant.

Our conclusion is, that the paragraphs of answers under consideration are good, and that the second, third and fourth paragraphs of reply are bad.

The fifth paragraph of reply, the demurrer to which was overruled by the court below, is, in brief, that all of the heirs had notice of the allowance of the claim of Welsh at the time, or within one year after the allowance was made, and that neither they nor their grantee have applied for an order setting aside the allowance. That paragraph of reply is based upon the statute of 1875, 2 R. S. 1876, p. 517, and the statute of 1881, R. S. 1881, section 2326.

The statute of 1875 provided, that upon a proper petition, filed within six months subsequent to the allowance of a claim against the estate by the administrator, the heirs might be allowed to defend against such claim.

The statute of 1881 provides, that where a claim is pending, or has been allowed against an estate, the heirs, creditors, etc., upon a verified petition, showing a meritorious defence, and the filing of a bond for costs, shall be entitled to an order setting the claim for trial as in case of claims not allowed, etc.

The contention of appellee's counsel is, that the heirs must seek relief from allowances against the estate under this statute ; that the remedy there provided is exclusive, and that, hence, neither they nor their grantee can defend against such allowed claim, in a proceeding by the administrator to procure a sale of the land to pay such claims. To adopt counsel's construction of the above statute, would be to overthrow the cases of *Cole* v. *Lafontaine, supra,* and *Jackson* v. *Weaver,* 98 Ind. 307, in which, as we have seen, it was held that the heirs, in a proceeding for an order to sell their land to pay a claim against the estate, may defend, and have a trial of the claim upon its merits, notwithstanding it may have been allowed.

As the heirs are not parties when a claim is filed against the estate, and may have no notice of such claim until its allowance, that statute was intended to give them the right, and provide a mode for defending against such claim, and thus protect the personal estate from unjust demands.

By protecting that estate they might indirectly, it is true, protect the real estate, but it does not result from that that they may not protect the real estate, when threatened in a proceeding like this, by defending against such claim.

We are constrained to hold, therefore, that the court below erred in overruling the demurrer to the fifth paragraph of the reply.

The regular judge, regarding himself as disqualified, appointed Hon. W. R. Pierse a special judge to try the case.

On the 24th judicial day of the April term, 1886, of the court, counsel for the respective parties agreed in open court that the trial of the case might be postponed until the 12th day of the following July, subsequent to the closing of the regular term. On the 30th judicial day of the April term, the special judge made an order that an adjourned term of the court should be held, commencing on the 12th day of the following July.

On the 24th day of June appellant filed an affidavit in the clerk's office for a change of judge, on account of the prejudice and bias of the special judge so appointed.

There was a rule of court that applications for a change of venue would not be entertained after cases were set by the court for trial, unless the cause for such change came to the knowledge of the party applying therefor after the setting of the cases, which fact should be stated in an affidavit.

In appellant's affidavit for such change, he stated that he and his counsel had been diligent in looking after the interests of appellant in the cause, and in preparing for the trial, and that he first learned of the prejudice and bias of the special judge after the time for the trial of the case had been agreed upon and fixed by the court; and that the affidavit was not made for delay, but in order that the cause might be fairly tried and justice done to appellant.

When the court met on the 12th day of July, and at his first opportunity, appellant presented his affidavit to the court and moved for a change of judge. That motion was overruled. Appellee's counsel seek to support that ruling of the court upon three grounds: *First.* That the case is not a civil action, and that hence there can be no change from the judge. *Second.* That appellant did not state facts in his affidavit showing that he was diligent in discovering the bias and prejudice of the judge. And, *Third.* That the application for a change was made in vacation, and that no notice thereof was given as required by the statute in such cases.

So far as the statute provides for the proceeding by an administrator to reach real estate to pay debts against the estate, and prescribes a procedure and rules of practice therein, the proceeding is a special statutory proceeding confined to the case before the court. The ruling in the case of *Seward* v. *Clark*, 67 Ind. 289, goes no further than that.

In many regards, the decedents' act does not provide a complete mode of procedure. That is so in relation to the proceedings by which the administrator may reach real estate for the payment of debts. Where a complete mode of procedure is not thus provided, we must look to the civil code, and apply the rules of pleading and practice provided for civil actions. To the extent that such rules of pleading and practice must be applied, the proceeding is a civil action.

The decedents' act does not provide for a change of judge, in a case like this, nor in the trial of a claim against the estate, but it does not follow that there can be no change from a biased and prejudiced judge in such cases, where the whole of the personal estate, and, beyond that, the real estate of the heirs, is involved, and may be swept away by the allowance of ill-founded claims, and the bias and prejudice of the judge when, in fact, there is such bias and prejudice.

We have had occasion recently to examine at length questions akin to that involved here, and need not repeat what has been so recently said. We are clearly of the opinion that the proceeding is a civil action in such a sense that a party may have a change of judge upon a proper application. See *Powell* v. *Powell*, 104 Ind. 18; *Evans* v. *Evans*, 105 Ind. 204; *Burkett* v. *Holman*, 104 Ind. 6; *Baker* v. *State, ex rel.*, 109 Ind. 47; *Lester* v. *Lester*, 70 Ind. 201.

We think too, that appellant brought his application within the rule of the court, by the statement in his affidavit, that he learned of the bias and prejudice of the special judge after the case was set for trial.

The application for a change from the judge was not made in vacation, in the sense of section 417 of the statutes, requir-

ing notice. As far as shown, it was not the purpose to procure a change of judge by an order made in vacation; on the contrary, the motion was made in open court, and was overruled in open court.

That the affidavit was filed with the clerk prior to the opening of the court in July, we think, can make no difference. For the error of the court in overruling appellant's motion for a change from the judge, the judgment must be reversed. This conclusion renders it unnecessary for us to decide anything in relation to the regularity of the special term of the court in July, and other questions discussed by counsel, as it is not apparent that they will be material upon a re-trial of the cause.

Judgment reversed, with costs.

Filed March 16, 1887.

## ON PETITION FOR A REHEARING.

ZOLLARS, C. J.—On the ground that the question will be material upon a re-trial of the cause, we are requested to decide as to the competency of certain witnesses whose depositions were used upon the trial below. Three witnesses, who were sons-in-law of the decedent, and are brothers-in-law of Welsh, were allowed to testify that Welsh lived on the farm of the decedent, and that both before and after the death of the decedent, Welsh had told them that he was to keep and support the decedent and his wife for the use of the decedent's farm; and that he had told them after the death of the decedent that he had no claim against the estate for the reason that he had been compensated by the use of the farm.

Those witnesses, it will be observed, were not heirs of the decedent, but were the husbands of daughters of the decedent, who were heirs.

They were not parties to this proceeding. Their wives were made parties, were defaulted, and made no defence in any way.

If, in this proceeding, the wives were incompetent as witnesses, under sections 498 and 499 of the statutes (R. S. 1881), the husbands were also incompetent as witnesses. So the statute declares. Section 501, R. S. 1881. The contrary to this was, in effect, held in the case of *Williams* v. *Riley*, 88 Ind. 290. Section 501, *supra*, was overlooked in the decision of that case, the incompetency of the witnesses having been urged by counsel upon another ground.

It is provided in section 498 of the statutes (R. S. 1881), that in suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the ancestor, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate.

It is further provided in section 499, that in all suits by or against heirs or devisees, founded on a contract with or demand against the ancestor, to obtain title to or possession of property, real or personal, of, or in the right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor.

We do not find it necessary to determine whether or not this action or proceeding is one in which the parties are disqualified to testify as witnesses, by sections 498 and 499, *supra*. Here, not only had the heirs parted with all interest in the land by and through their sale and conveyance, but they had been defaulted. They no longer had any interest in, nor were they parties to, any issue to be tried. It has been ruled by this court several times, that the term " party," as used in the above sections of the statute, must be held to mean a party to the issue, and not merely a party to the record; that if a party to the record merely, he must be interested in the issue in favor of the party calling him. *Upton*

v. *Adams,* 27 Ind. 432; *Starret* v. *Burkhalter,* 86 Ind. 439; *Spencer* v. *Robbins,* 106 Ind. 580. The witnesses, we think, were competent.

This disposes of appellee's petition.

Filed May 27, 1887.