LUCIEN PAYNE AS ADMINISTRATOR *c. t. a.* OF ESTATE OF
ISABELLE McCORQUODALE v. WILLIAM LEE.[1]

July 5, 1946.

No. 34,255.

[1]Reported in 24 N. W. (2d) 259.

*Lauerman & Pfeiffer,* for relator.
*Salmer N. Knutson,* for respondent.

MATSON, JUSTICE.

Relator, Lucien Payne, as administrator of the estate of Isabelle McCorquodale, deceased, petitioned this court for a writ of prohibition directed to respondent as judge of the probate court in and for Yellow Medicine county, commanding him to desist and refrain from hearing and determining any and all matters in said estate now in issue. In particular, the contested matters before the probate court which relator seeks to restrain respondent from determining are:

(1) The final account of a former special administrator, A. F. Koch, to which account relator has duly filed objections.

(2) A claim for $320 against decedent's estate filed by Dean Rogers for board, lodging, and transportation furnished decedent, to which claim relator has duly filed objections.

(3) An order to show cause issued by respondent directing relator to appear before respondent on March 25, 1946, and show cause why relator's letters of administration herein should not be revoked.

On March 19, 1946, a writ of prohibition issued out of this court commanding respondent to desist and refrain from all proceedings herein until the further order of this court and to show cause here on March 28, 1946, at 9:30 a. m. why he should not be permanently restrained from further proceeding in said estate.

This controversy relates back to respondent's appointment of said A. F. Koch as special administrator and subsequently as general administrator with the will annexed of said estate not-

withstanding the opposition thereto of relator and the residuary devisees. Relator appealed from such orders of appointment to the district court of Yellow Medicine county, which subsequently reversed the probate court, vacated its orders of appointment, and directed the appointment of relator as administrator with the will annexed in said estate.

Relator contends that respondent is disqualified from acting further as a judge in said probate proceedings by reason of prejudice or bias, and that he is further disqualified on the ground that he may be a necessary witness in controverted matters involved therein. If bias or prejudice exists and constitutes a ground for disqualification, it will not be necessary to consider whether sufficient showing has been made to establish the second ground, namely, that respondent is or will be a necessary witness in the proceedings. Respondent, in answer to relator's petition and supporting affidavits, makes no specific or general denial of bias, except to deny that he has any interest in the estate, in the appointment of any person as representative, in the allowance or disallowance of the final account, or in the allowance or disallowance of any claim against the estate.

We note that as a result of the litigation herein a good deal of bitterness has been engendered between relator, his attorneys, and the residuary devisees on the one hand and respondent on the other, with sharp correspondence passing between them and culminating in respondent's order directing relator to show cause why he should not be removed as such administrator. No purpose will be served by a detailed review of the showing of fact indicating the growth and existence of mutual antagonism. It is sufficient to note that the resulting atmosphere has been tense and anything but conducive to the maintenance of that neutral state of mind so necessary to the adjudication of controversial issues. Whether either party has been at fault or whether a natural antipathy exists, we need not decide. It is enough that, for one reason or another, a condition has arisen that will indeed make it difficult, if not impossible, for respondent to assume in fact and appearance a role

of unquestioned impartiality in determining the matters in dispute. Under the circumstances, it appears that bias or prejudice exists in fact. We therefore turn to the question as to whether bias or prejudice constitutes a ground for disqualification.

■ Bias or prejudice disqualifies a probate judge from hearing a case and imperatively requires that a probate judge from another county be summoned to act in his stead. It is true that in enacting Minn. St. 1941, § 525.05 (Mason St. 1940 Supp. § 8992-7), the legislature did not specify bias as one of the grounds for disqualification, but it should be noted that the grounds given are not exclusive and that others were contemplated as existing. This becomes at once apparent by an examination of the section immediately following, namely, § 525.051 (§ 8992-8), which provides:

"When the disqualification, absence, or illness of the resident judge exists, *or when in his opinion the interest of the public or of any person interested in any matter* requires that the probate judge of another county act in the stead of the resident judge, any other judge may act upon the request of the resident judge, or in the event of his incapacity, upon the request of the presiding judge of the district court in the county wherein such matter is pending." (Italics supplied.)

The words above italicized confer upon the resident probate judge a judicial, and not an arbitrary, discretion, which requires him, in the event of bias toward any party in interest, to recognize his disqualification.[2]

Failure to recognize bias as a ground of disqualification is an abuse of discretion and a violation of Minn. Const. (Bill of Rights) art. 1, § 8, which provides:

"Every person * * * ought to obtain justice freely and without purchase; *completely and without denial* * * *." (Italics supplied.)

---

[2]It has in fact been held that a trial judge who does not voluntarily disqualify himself for existing bias may lose jurisdiction of the case. State ex rel. McAllister v. Slate, 278 Mo. 570, 214 S. W. 85, 8 A. L. R. 1226.

A concept of judicial administration which leads one to assume that justice can be obtained "completely and without denial" before a tribunal that is partial, biased, or hostile is certainly one alien to our institutions. If we were to assume that complete justice could with any likelihood be so dispensed, it would be a justice which commanded neither the respect nor the confidence of the citizen. Mr. Justice Dunbar in State ex rel. Barnard v. Board of Education, 19 Wash. 8, 17, 52 P. 317, 320, 40 L. R. A. 317, 67 A. S. R. 706, in pointing out the necessity of an impartiality, free of all suspicion, said:

"* * * The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts; in fact, the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through and pervading the whole system of judicature, and it is the popular acknowledgment of the inviolability of this principle which gives credit, or even toleration, to decrees of judicial tribunals. Actions of courts which disregard this safeguard to litigants would more appropriately be termed the administration of injustice, and their proceedings would be as shocking to our private sense of justice as they would be injurious to the public interest. The learned and observant Lord Bacon well said that the virtue of a judge is seen in making inequality equal, that he may plant his judgment as upon even ground. Caesar demanded that his wife should not only be virtuous, but beyond suspicion; and the state should not be any less exacting with its judicial officers, in whose keeping are placed not only the financial interests, but the honor, the liberty and the lives of its citizens, and it should see to it that the scales in which the rights of the citizen are weighed should be nicely balanced, for, as was well said by Judge Bronson in People v. Suffolk Common Pleas, 18 Wend. 550:

" 'Next in importance to the duty of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge.' "

In Ex parte Ellis, 3 Okl. Cr. 220, 227, 105 P. 184, 187, 25 L.R.A. (N.S.) 653, 661, Ann. Cas. 1921A, 863, the court said:

"* * * No technical refinement of argument can convince the people that a prejudiced judge can fairly try a case between his friend and his foe. Such a thing might occur, but the general public would not look upon such a trial as an administration of justice without prejudice."

Idaho (art. I, § 18) and Oklahoma (art. II, § 6) have similar provisions in their constitutions to the effect that "justice shall be administered without sale, denial, delay, or prejudice." It is true that these constitutional provisions expressly include the word "prejudice." By contrast, however, our constitution emphasizes substantially the same requirement for unbiased justice by providing that justice shall be obtained "completely and without denial." The Idaho supreme court in construing its constitutional provision said in Day v. Day, 12 Idaho 556, 562, 86 P. 531, 532, 10 Ann. Cas. 260, 262:

"* * * There is no question but what said provision is self-operating, and it is regarded as settled in this country that all negative or prohibitive clauses in a constitution are self-executing."

The court further said (12 Idaho 563, 86 P. 533, 10 Ann. Cas. 262) :

"* * * For it cannot be maintained that a judge who is biased or prejudiced in a case on trial before him can administer justice without prejudice. Disregarding said provisions of the constitution, the ordinary principles of right and justice prohibit or disqualify a judge from trying a case in which he is prejudiced for or against either of the parties to the suit. This provision of the constitution cannot be brushed aside by saying that it is a mere maxim of the law and means nothing. For the principle therein expressed is one of the foundation-stones of our judicial system and jurisprudence, and could not be removed without shattering the entire system."

With regard to the corresponding constitutional provision, the Oklahoma supreme court, in Ex parte Hudson, 3 Okl. Cr. 393, 394, 106 P. 540, 541, held:

"The clear meaning of this provision is to prohibit the trial of any cause by a judge or juror who are [sic] prejudiced against either party to the cause. Prohibitive clauses of a constitution are always self-executing, and require no legislative provisions for their enforcement."

Whether pursuant to constitutional mandate or statutory command, the necessity of unquestioned impartiality is one of wide recognition. See, Day v. Day and Ex parte Hudson, supra; Crawford's Estate, 307 Pa. 102, 160 A. 585; King v. Grace, 293 Mass. 244, 200 N. E. 346; State ex rel. McAllister v. Slate, 278 Mo. 570, 214 S. W. 85, 8 A. L. R. 1226; McCormick v. Walker, 158 App. Div. 54, 142 N. Y. S. 759; Barnett v. Ashmore, 5 Wash. 163, 31 P. 466; State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613.

■ The failure to provide a litigant a fair and impartial tribunal before which to adjudicate his private rights is also in violation of the due process clause of U. S. Const. Amend. XIV. Buck v. Bell, 143 Va. 310, 130 S. E. 516, 51 A. L. R. 855; Stahl v. Board of Supervisors, 187 Iowa 1342, 175 N. W. 772, 11 A. L. R. 185. In the latter case the Iowa supreme court said (187 Iowa 1352, 175 N. W. 776):

"The constitutional guaranties recognize, as a primal necessity, that there be laws providing impartial tribunals for the adjudication of rights."

See, 3 Willoughby, Constitution of the United States (2 ed.) § 1124; 12 Am. Jur., Constitutional Law, § 635.

■ It is immaterial that the legislature has not expressly included bias as a ground for disqualifying a probate judge in its statutory enactments. The provisions of the constitution in this respect are self-executing. Willis v. Mabon, 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 A. S. R. 626; Davis v. Burke, 179 U. S. 399, 21 S. Ct. 210, 45 L. ed. 249. Prohibitive clauses of a

constitution are always self-executing and require no legislative provisions for their enforcement. State v. Kyle, 166 Mo. 287, 65 S. W. 763, 56 L. R. A. 115; Rea v. State, 3 Okl. Cr. 276, 105 P. 384, 139 A. S. R. 954; Day v. Day, 12 Idaho 556, 86 P. 531, 10 Ann. Cas. 260; King v. Grace, 293 Mass. 244, 200 N. E. 346; Williams v. Robinson, 60 Mass. (6 Cush.) 333; Leonard v. Willcox, 101 Vt. 195, 142 A. 762; 30 Am. Jur., Judges, § 74.

In Williams v. Robinson, 60 Mass. (6 Cush.) 335, the Massachusetts supreme court held:

"* * * It was not necessary that the statutes should enumerate all the disqualifications of the standing justice. The rules of the common law and the principles of natural justice are to be applied in the construction of these statutes."

■ Bias disqualifies a judge, whether it be born of a selfish or pecuniary interest in the outcome of the suit or of an overpowering personal spleen directed toward one of the litigants. Neither the cause of, nor the motive for, the bias is of any consequence. It is enough if bias from any cause deprives a judge of his impartial status. Leonard v. Willcox, 101 Vt. 195, 142 A. 762; State ex rel. Barnard v. Board of Education, 19 Wash. 8, 52 P. 317, 40 L. R. A. 317, Annotation, 67 A. S. R. 714. Likewise, a judge may be disqualified by his prejudice toward an attorney in such a degree as adversely to affect the client's interest. State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613. It has frequently been said that at common law, as administered in England and the United States, bias not the result of interest or relationship is not supposed to exist; but it is to be noted that the later English cases hold that where a real likelihood of bias from any cause is shown to exist a judge is thereby disqualified. Cottle v. Cottle [1939] 2 All E. R. 535. See, Rex v. Sheffield Confirming Authority, K.B.D. [1937] 4 All E. R. 114. In Frome United Breweries Co. v. Keepers, etc. of Bath, H. L. [1926] A. C. 586, 590, 135 L. T. 482, 483, Lord Chancellor Cave said:

"* * * if there is one principle which forms an integral part of the English law, it is that every member of a body engaged in

a judicial proceeding must be able to act judicially; and it has been held over and over again that, if a member of such a body is subject to a bias *(whether financial or other)* in favour of or against either party to the dispute *or is in such a position that a bias must be assumed,* he ought not to take part in the decision or even to sit upon the tribunal." (Italics supplied.)

Impartiality is likewise the very foundation of the American judicial system. Leonard v. Willcox, 101 Vt. 195, 142 A. 762; State ex rel. McAllister v. Slate, 278 Mo. 570, 214 S. W. 85, 8 A. L. R. 1226; Day v. Day, 12 Idaho 556, 86 P. 531, 10 Ann. Cas. 260; Ex parte Hudson, 3 Okl. Cr. 393, 106 P. 540, 107 P. 735; King v. Grace, 293 Mass. 244, 200 N. E. 346; McCormick v. Walker, 158 App. Div. 54, 142 N. Y. S. 759, all *supra;* People ex rel. Burke v. District Court, 60 Colo. 1, 152 P. 149; Stamp v. Commonwealth, 195 Ky. 404, 243 S. W. 27.

■ If bias is present, a probate judge has no power to exercise his jurisdiction in violation of the constitution or in violation of any statute enacted pursuant thereto. State ex rel. McAllister v. Slate, and Leonard v. Willcox, *supra.* A writ of prohibition lies to prevent any inferior court from exceeding its legitimate power and authority. State ex rel. Jonason v. Crosby, 92 Minn. 176, 99 N. W. 636; State ex rel. Jarvis v. Craig, 100 Minn. 352, 111 N. W. 3; 5 Dunnell, Dig. & Supp. § 7845. It has long since been established that the writ may be used to restrain a probate court from exceeding its power or jurisdiction. Case of Lee, 1 Minn. 44 (60); United States ex rel. Davis v. Shanks, 15 Minn. 302 (369); State ex rel. Prendergast v. Probate Court, 19 Minn. 85 (117); State ex rel. Roberts v. Hense, 135 Minn. 99, 160 N. W. 198. The finding of a probate judge that he is not disqualified by reason of bias to exercise his jurisdiction is not conclusive, and a writ of prohibition lies to try his competency. See, Leonard v. Willcox, *supra;* Forest Coal Co. v. Doolittle, 54 W. Va. 210, 46 S. E. 238; State ex rel. McAllister v. Slate, *supra;* State ex rel. Barnard v. Board of Education, 19 Wash. 8, 52 P. 317, 40 L. R. A. 317, Annotation, 67

A. S. R. 714, and People ex rel. Burke v. District Court, 60 Colo. 1, 152 P. 149, *supra*.

■ Although a writ of prohibition is appropriate for determining whether a probate judge is disqualified for bias, we observe that a more expeditious and suitable remedy is to be had by applying to the district court for a writ of mandamus. See, Minn. St. 1941, § 586.11 (Mason St. 1927, § 9732); Medlin v. Taylor, 101 Ala. 239, 13 So. 310; Barnett v. Ashmore, 5 Wash. 163, 31 P. 466; Ex parte Hudson, 3 Okl. Cr. 393, 106 P. 540, 107 P. 735.

Probate proceedings normally involve many steps, which can be taken only with the approval of the court and wherein the action of the judge is not merely formal or ministerial in its nature, but judicial. In such a situation, to leave the litigant with no other relief from a biased judge than that afforded by the remedy of appeal (even though the litigant becomes entitled thereby to a trial *de novo*) can result only in a multiplicity of appeals—a condition so burdensome as to constitute, from a practical standpoint, a denial of complete justice. Where judicial functions are involved in probate proceedings, a probate judge, like a judge in any other civil proceeding, is subject to disqualification. Jackman Will Case, 27 Wis. 409; Scherer v. Ingerman, 110 Ind. 428, 11 N. E. 8, 12 N. E. 304; Fort v. White, 54 Ind. App. 210, 101 N. E. 27; Lester v. Lester, 70 Ind. 201; Daniels v. Bruce, 176 Ind. 151, 95 N. E. 569. The rule that the disqualification of judges must yield to the demands of necessity, as, for example, in cases where the disqualification of a judge would destroy the only tribunal in which relief could be had, has no application, in that other probate judges are available in nearby counties and are readily and conveniently subject to call. See, 30 Am. Jur., Judges, § 55; 15 R. C. L., Judges, § 29.

Some of the most important property rights of the individual citizen and his family are adjudicated in probate administration, and to deny to any litigant therein the unquestioned right to an impartial hearing violates the fundamental traditions of American justice. There can be no doubt that the legislature would have

specified bias as a ground of disqualification if it had occurred to its members that any judge would ever assume to act where his impartiality is seriously challenged. The lack of express legislation does not, however, defeat the positive mandate of the constitution that justice shall be obtained "completely and without denial."

The writ of prohibition heretofore issued is made absolute.

[1]Reported in 24 N. W. (2d) 237.