IN RE ESTATE OF JOHN BAUMGARTNER, SR.

144 N. W. (2d) 574.

July 1, 1966—No. 39,766.

*Whitney E. Tarutis,* for appellants.

*Nelson, Clemmensen & Reuther, Howard E. Paulson,* and *Korbel & Gospodar,* for respondents.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from a judgment of the District Court of Wilkin County affirming an order of the probate court of said county, which in substance:

(1) Approved the compensation, final account, and resignation of Peter Seterdahl as administrator for the estate of John Baumgartner, Sr., deceased.

(2) Allowed as reasonable, attorneys' fees in the sum of $3,500 for Howard E. Paulson and the firm of Nelson, Clemmensen & Reuther for services rendered the estate, both before and subsequent to the appointment of an administrator therein; and in the sum of $1,770 for the firm of Korbel & Gospodar for services rendered the estate subsequent to the appointment of the administrator.

(3) Allowed certain expenditures by attorneys for the estate for witnesses and other items relative to administration of the estate.

(4) Determined that the attorneys described had not represented subversive or conflicting interests detrimental to the estate therein.

(5) Appointed Elmer A. Oliver as successor administrator to Peter Seterdahl.

In the present appeal two of decedent's sons claim that the probate court order should not have been affirmed by the district court in that (1) the evidence established that Peter Seterdahl as administrator had not properly performed the duties of his office; and (2) the payment of attorneys' fees for counsel for the administrator for services rendered subsequent to the petition for administration but prior to appointment of the administrator was improper.

In substance, it appears that the objection of appellants to the administration and final account of Peter Seterdahl as administrator relates to an account receivable from William Baumgartner in the sum of $7,000 which the administrator has listed as an asset in decedent's

estate and which is described in the inventory filed by Seterdahl as an account receivable from William Baumgartner for an undivided one-half interest in 145 cattle disclosed in the final account of William T. Curran, who had acted as guardian of decedent's estate prior to his death, and which were not shown to be in existence when the inventory was prepared. The item was described in the guardian's final account as a one-half interest in 145 head of cattle. It is appellants' contention that the administrator should not have listed this item as an account receivable, but rather that he should have listed the market value of decedent's one-half interest in the cattle as an asset of the estate. The record establishes, however, that in the administration of the estate the cattle described were never seen or located. The item was listed as indicated because, according to the testimony of the guardian, during the guardianship he and William reached an agreement for the purchase by William of decedent's one-half interest in the cattle for $7,000 and William was therefore indebted to decedent for that sum. The debt created by the agreement was acknowledged by the administrator as an account receivable when the assets were turned over to him.

The record discloses that William claims that at the time of his death decedent was indebted to him in the sum of $26,718.18 arising out of their joint farming operations but offset to the extent of the $7,000 due on his purchase of decedent's interest in the cattle. A claim against the estate for the resulting $19,718.18 was filed by William. In seeking to establish it, he retained William Dosland as his counsel. Henry and Lavern Baumgartner, children of the decedent, filed objections to the claim and asserted therein that William was indebted to the estate in an amount to be determined by the court. In this they were represented by Whitney E. Tarutis as attorney. Peter Seterdahl upon his appointment as administrator also filed written objections to William's claim. Therein he denied that the estate was indebted to William in any amount and alleged that William was indebted to the estate for $7,000 arising out of the cattle transaction which he asserted took place about March 1, 1962.

In this phase of the probate proceedings the administrator was represented by Korbel & Gospodar, attorneys, in order to avoid any conflict in interest which might arise by reason of the relationship between

Leo Reuther, judge of probate court of Wilkin County, and Bruce Reuther, one of the members of the firm of Nelson, Clemmensen & Reuther, which had been representing the estate. William's claim was disallowed by the probate court of Wilkin County, which ordered judgment against him in favor of the estate for $7,000 on the cattle transaction. An appeal from the order to this effect is now pending in the district court of said county. Subsequent to the probate court hearing on this claim, Seterdahl tendered his resignation as administrator and submitted his final account therein. Objections to it were filed by some of the heirs, and after a lengthy hearing in probate court, it was allowed by the probate court. Seterdahl's resignation was also authorized at that time. In this account Seterdahl listed the $7,000 item due from William as an account receivable. From the order allowing the account an appeal was taken to the District Court of Wilkin County. On September 23, 1964, that court, after an extended hearing, affirmed the probate court order allowing Seterdahl's final account, accepting his resignation as administrator, and appointing Elmer A. Oliver to succeed him. From the judgment entered pursuant to this order, the present appeal to this court was taken by Henry and Lavern Baumgartner.

With respect to the allowance of attorneys' fees to which appellants object, a summary of the entire probate proceedings to date is necessary to disclose the nature and extent of the legal services rendered. The law firm of Nelson, Clemmensen & Reuther and Howard Paulson, for whom the sum of $3,500 as attorneys' fees was allowed, first instituted the proceedings on behalf of William Baumgartner and John Baumgartner, Jr., by filing a petition for administration of the estate in the probate court of Wilkin County on March 21, 1962. Therein they prayed for the appointment of Lawrence Paulson, a banker and resident of Rothsay in Wilkin County, as administrator. On the same date a petition was filed in the probate court of Clay County by Hazel Miller, a daughter of the decedent, seeking administration of the estate in that county and alleging that decedent had been a resident of it at the time of his death. Written objections to the Wilkin County proceedings were filed by Hazel Miller and other children of the decedent. On May 15, 1962, after an extensive hearing in the probate court of Wilkin County at which all parties were

present with their counsel, the petition filed in the probate court of Wilkin County was granted and Lawrence Paulson named as administrator. Before letters were issued to Paulson, an appeal was taken from this order to the District Court of Wilkin County. There, after a further lengthy trial, the district court affirmed the order of the Wilkin County probate court granting the petition for administration but directed that Peter Seterdahl instead of Lawrence Paulson be appointed administrator because, as the court suggested, Paulson had had rather close business relationships with some of decedent's children. Thereafter on June 26, 1963, letters of administration to Seterdahl were issued by the probate court of Wilkin County.

Prior to and during the administration of Seterdahl, the attorneys for the original petitioners in Wilkin County investigated and endeavored to locate the assets of the estate. These were then under the control and custody of the guardian and estimated to be of the value of approximately $128,886. During Seterdahl's administration the contest of the William Baumgartner claim was litigated in the probate court of Wilkin County. As indicated above, when Seterdahl tendered his final account, objections were filed to it and a lengthy hearing was held thereon. It was ultimately allowed by the probate court and its order was affirmed by the district court. On December 18, 1963, his successor administrator was appointed.

Throughout all the proceedings with the exception of the William Baumgartner claim contest, Nelson, Clemmensen & Reuther and Howard Paulson were furnishing services for the petitioners and indirectly for the estate. In that capacity they established that the probate court of Wilkin County had jurisdiction in the probate proceedings, and that Lawrence Paulson was qualified to act as administrator. Upon appeal to the district court, however, they advised that court that in view of the objections of some of the heirs to his appointment it would be agreeable to petitioners that Mr. Seterdahl be appointed. They located decedent's assets and prepared and filed the inventory and appraisal showing them to have an appraised value of $132,153.48. They conferred with the internal revenue agent with respect to prior taxes and prepared and submitted the final account of Seterdahl as administrator. They established its authen-

ticity and procured its allowance in both the probate and district courts of Wilkin County. They submitted testimony to the effect that they had expended a total of 240 hours in connection with the probate proceedings, some of which had been furnished prior to the appointment of the administrator, delayed by reason of the appeal to the district court taken by some of the heirs.

Mr. Nelson testified that he had personally expended 80 hours in the proceedings and that in his opinion their reasonable value was at least $20 per hour or a total valuation of $1,600. He testified that while originally he had represented William and John Baumgartner, Jr., as petitioners in the probate proceedings, his primary purpose was to protect and preserve decedent's assets through the appointment of a proper administrator; that he had no knowledge that William was to file a claim against the estate and had been under the impression that his claim had been settled in the guardianship proceedings; that prior to June 25, 1963, neither his firm nor Mr. Paulson had had any control over the assets but that they had made inquiry to determine their location and to find out how much money and how much real estate was involved and likewise to ascertain whether or not there was farm machinery which would require attention; that after Seterdahl's appointment he had procured physical possession of the assets which were found to be in accordance with those listed in the final account of the guardian as allowed by the probate court of Clay County. He testified that it had been impossible to do more work for the estate because the estate "never had an administrator long enough to do anything"; that they could not "even file a federal tax return because the minute somebody is appointed, no matter who it is, there is an appeal taken."

Howard Paulson testified that he had expended 76 hours in services for the estate and that the fair and reasonable value was the sum of $15 per hour or a total of $1,140; that 56 hours of this time had been expended before the appointment of the administrator but that the work he did during that period he regarded as having been done for the benefit of the estate in that he had endeavored to sustain the jurisdiction of the Wilkin County probate court and to have a suitable administrator appointed; that the attorneys for the estate were hampered in its adminis-

tration because appeals were constantly taken from the probate proceedings; that in certain matters he had worked with Mr. Nelson and that when he and Mr. Nelson had worked together the fair and reasonable value of their services was $35 per hour; that when they discovered that William had filed a claim against the estate they deemed it best that the estate be represented by independent counsel in contesting this claim; and that it was necessary that he travel to Moorhead to receive the assets and accounting from Mr. Curran, the guardian.

Mr. Bruce Reuther testified that he had expended a total of 84 hours up to the time of the final account of Mr. Seterdahl, of which 12 hours had been furnished prior to his appointment and the rest after such appointment; that since the final account had been filed he had expended an additional 49½ hours on behalf of the administrator; that the fair and reasonable value of all such services was $15 per hour; and that in his opinion the fair and reasonable value of all the legal services described was the sum of $3,500, the amount allowed by the probate court.

■ The present appeal from the judgment entered subsequent to the district court hearing is taken by Henry Baumgartner and Lavern Baumgartner, two of decedent's children. Since there was no preliminary motion for amended findings or a new trial, our only function here will be to determine whether the evidence sustains the findings and whether such findings sustain the conclusions and judgment. Olson v. Mullen, 244 Minn. 31, 68 N. W. (2d) 640; Hickman v. Sutherland, 222 Minn. 161, 23 N. W. (2d) 593; In re Estate of Fitzgerald, 205 Minn. 57, 285 N. W. 285.

■ An examination of the services rendered by various counsel for the estate is convincing that the amount allowed for attorneys' fees was fair and reasonable. The total value of the estate was in excess of $132,000 according to the inventory and appraisal. The assets consisted of farm land and of personal property, appraised at $99,253.48, which included equipment ordinarily used in connection with farming operations and savings and checking accounts in various depositories. In the administration of the estate, it was necessary for counsel to engage in extensive litigation, to defeat claims against the estate and to collect its assets. While a substantial amount of this work was done prior to the ap-

pointment of the administrator, it ultimately inured to the benefit of the administrator and the estate. Minn. St. 525.49[1] provides that an attorney performing services for an estate at the instance of the representative shall have such compensation from the estate as the court deems just and reasonable. This would require that all legal services furnished for the benefit of an estate be taken into consideration in determining just and reasonable attorneys' fees. It often transpires that much of the services furnished by attorneys for the benefit of estates are performed prior to the appointment of the administrators or executors therein. During this preliminary period attorneys are often required to locate and preserve the assets of the estate; to investigate joint tenancy holdings; to determine the status of insurance policies; to ascertain various estate and inheritance tax situations which may arise; to look after rental of properties; to order emergency repairs to real estate; to insure preservation of crops; to provide for the care of stock and to perform numerous other tasks of a like nature. To hold that they should be denied compensation for services of this kind because they were performed before the appointment of a representative of the estate would be unjust and beyond the plain implications of § 525.49. This court in In re Estate of Simmons, 214 Minn. 388, 8 N. W. (2d) 222, 10 N. W. (2d) 481, recognized the right of an administrator to collect fees for services furnished as an attorney before his appointment as administrator, where it was shown that such services were for the benefit of the estate, and it appears reasonable to apply this rule to services furnished by an attorney for an

---

[1] Minn. St. 525.49 provides in part: "Every representative shall be allowed his necessary expenses incurred in the execution of his trust and shall have such compensation for his services as the court shall deem just and reasonable. An attorney performing services for the estate at the instance of the representative shall have such compensation therefor out of the estate as the court shall deem just and reasonable. Where, upon demand the representative refuses to prosecute or pursue a claim or asset of the estate or a claim is made against him on behalf of the estate and any party interested shall then by his own attorney prosecute or pursue and recover such fund or asset for the benefit of the estate, such attorney shall be allowed such compensation out of the estate as the court shall deem just and reasonable and commensurate with the benefit to the estate from the recovery so made."

estate under like circumstances. 21 Am. Jur., Executors and Administrators, § 545; Annotation, 90 A. L. R. 102. Of course, it is well recognized that where the services performed do not inure to the benefit of the estate, no compensation should be allowed. 21 Am. Jur., Executors and Administrators, §§ 548, 555; Annotation, 90 A. L. R. 102. Here because of objections filed by appellants and others, and because of appeals by them, it was necessary for the attorneys for the original petitioners to expend a great amount of additional time to procure probate of the estate in the proper jurisdiction and to procure an administrator who would be capable and impartial in the performance of his duties. In addition, of course, they made arrangements to have the property farmed during the 1962-1963 seasons; located and inventoried decedent's assets; and established their appraisal value at $132,153.48. The probate court allowed them compensation for such legal services in the amount set forth by the administrator in his final account. This amount was affirmed on appeal to the district court and the evidence as above outlined appears more than sufficient to sustain its finding thereon. This court has held that the allowance of compensation for attorneys' fees in probate proceedings rests largely in the discretion of the probate court; and that the reasonable value of such services is a question of fact. In re Estate of Weisberg, 242 Minn. 150, 64 N. W. (2d) 370.

■ With respect to the $7,000 item listed by Seterdahl as an account receivable in the estate, we find nothing improper in so listing this asset or in the court's approval of his account. It is to be noted that at this time the total obligation of William to the estate has not been determined. In the district court proceedings now pending on this question, the matter will be litigated in full. There, the value of the cattle and their disposition can be determined. Likewise, it can be determined whether William's claim that he had entered into an agreement with decedent to purchase the latter's interest in them for $7,000 is sustained by the evidence. In so far as this appeal is concerned, there is nothing before us which would require upsetting the final account of the administrator or reversing the judgment of the district court with respect thereto. The ultimate disposition of the matter will be decided in the district court. If that court should determine that the probate court erred in the allowance of the adminis-

trator's final account with respect to the $7,000 item or otherwise, the probate court, of course, would be required to reopen the case and adjust the account in accordance with the district court's decision.

■ Counsel for appellants has listed a number of other assignments of error in his brief. We have endeavored to examine these conscientiously and have searched the record to ascertain whether there is merit to any of them. We have concluded that none of them would require reversal of the judgment from which the appeal is taken.

Affirmed.