In re CONSERVATORSHIP OF Peter M. MANSUR, Conservatee.

No. C2–84–1854.

Court of Appeals of Minnesota.

May 7, 1985.

Review Denied July 11, 1985.

Rehearing Denied July 26, 1985.

Lawrence R. Commers, Pamela M. Harris, Kirk W. Reilly, Minneapolis, for appellant Peter M. Mansur.

Sidney P. Abramson, St. Paul, for respondent Homer Bonhiver.

Ronald H. Usem, St. Paul, for respondent Theodore Collins.

Duane M. Peterson, Winona, Successor Conservator.

Claude M. Loewenthal, Minneapolis, for Kathleen Mansur.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and RANDALL, JJ.

## OPINION

SEDGWICK, Judge.

This appeal was taken by the conservatee from the allowance of a final accounting. Appellant contends the trial court improperly allowed excessive fees charged by the prior conservator and attorneys. The attorneys filed a notice of review from the trial court's disallowance of $3,162.49 incurred in transferring the estate to the successor conservator and attorneys. We affirm the accounting and reverse the disallowance of the transition period attorney fees.

## FACTS

The conservatee, a 57-year-old attorney, was injured in an automobile accident in April 1980. In August 1982 he consulted attorney Theodore Collins (Collins) of the Collins, Buckley, Sauntry & Haugh law firm (the firm) for representation on a pending professional responsibility complaint. Eventually, Collins and the firm assumed representation of Mansur in his dissolution, an additional professional responsibility complaint, a mortgage foreclosure matter in Eden Prairie, a separate law suit brought by one of the professional responsibility complainants, multiple suits arising from various real estate dealings with Richard Vogel, a dispute concerning the Apache Medical Center, and the preparation of income tax returns which had not been filed. Without detailing the nature of the many pending lawsuits, it is fair to say that conservatee was involved in substantial complex litigation.

At the suggestion of Collins, Mansur petitioned for the appointment of a conservator with limited powers in March 1983. His petition for the appointment of respondent Homer Bonhiver was granted in May 1983. Bonhiver is a CPA with 20 years experience as a trustee and receiver in complex legal matters. He considered his main function to be the reconstruction of business records and transactions which applied to the many pending matters. Collins continued to act as Mansur's attorney.

In November 1983, Mansur sought to remove Collins and Bonhiver. Bonhiver sought court instructions on how to proceed further. On December 6, 1983, the trial court ordered Bonhiver to continue as conservator, authorized him to retain Collins to pursue Mansur's legal matters, and disallowed payments to the substitute counsel chosen and hired by Mansur. Bonhiver was authorized to compromise and settle lawsuits as he thought best, but all settlement payments were to be approved by the trial court. Mansur objected to settlement of one lawsuit and sought to discharge Collins.

In March 1984 Mansur moved for appointment of a successor conservator and Bonhiver petitioned to withdraw. By order dated March 21, 1984 the trial court substituted Duane Peterson as successor conservator and authorized Peterson to retain Jeffrey Keyes as counsel for Mansur. Bonhiver was ordered to submit his final account and bills for fees and expenses incurred to date.

Mansur objected to the filed account, arguing the fees charged by Bonhiver, Collins and their associates were excessive. After a two day hearing, the trial court allowed the account, except for a $3,162.49 claim from the Collins firm, which was disallowed without a stated reason. Appellant conservatee appeals from the September 12, 1984 order allowing the final account and respondent firm seeks review of the disallowance of their claim for $3,162.49.

## ISSUES

1. Did the trial court properly allow the fees of the conservator, conservatee's attorneys, and their associates?

2. Did the trial court properly disallow a claim for attorney fees incurred in trans-

ferring the estate to the successor conservator and attorneys?

## ANALYSIS

1. Conservators and attorneys may recover reasonable fees for services which inure to the benefit of the estate. Minn.Stat. § 525.515 (1984), *In re Estate of Baumgartner*, 274 Minn. 337, 144 N.W.2d 574 (1966). The allowance of fees is largely a matter of discretion and the reasonable value of services is a question of fact. *Baumgartner*. Review of the probate court's determination of factual questions is governed by Minn.R.Civ.App.P. 52.01 and a finding of reasonableness will not be set aside unless clearly erroneous. *In re Estate of Serbus*, 324 N.W.2d 381 (Minn. 1982). We will give due deference to the court's opportunity to observe the witnesses and evaluate their credibility. *Id., In re Probate Court, Hennepin County*, 293 Minn. 94, 198 N.W.2d 260 (1972). However, the trial court's discretion does not permit the allowance of exorbitant fees which would dissipate the estate. *In re Weisberg's Estate*, 242 Minn. 150, 64 N.W.2d 370 (1954).

The probate court allowed fees totaling $61,190.77 for services performed by Bonhiver and his associates, Edward Buckmaster and Shirley Juve. Bonhiver testified he calculated his fees at $75 per hour. No witness testified that hourly rate was unreasonable. Bonhiver delegated various matters to Edward Buckmaster, a CPA who rented office space from him. Buckmaster is an independent contractor and he billed $35 per hour for his services, which frequently included dealing directly with Mansur. Shirley Juve, also an independent contractor, met with Mansur, performed the bookkeeping for the estate, maintained the checkbook, made necessary deposits and payments, managed the investments and performed occasional secretarial services as needed. She charged $15 per hour.

The services of Bonhiver, Buckmaster and Juve were billed at their respective hourly rates, without an itemization of the specific services performed each hour.

Bonhiver testified Mansur and Collins approved this method of billing. On appeal, the conservatee argues the trial court could not conclude the conservator's services inured to the benefit of the estate without detailed documentation of the services performed. We do not agree.

The fees of the executors of the Archibald Bush estate were allowed, despite the lack of detailed descriptions of the work done. *In re Estate of Bush*, 304 Minn. 105, 230 N.W.2d 33 (1975). The management of the Bush estate was inexorably intertwined with the affairs of the Bush Foundation and matters involving the one inevitably involved the other. *Bush*, 304 Minn. at 118, 230 N.W.2d at 41. Here, it was also impossible to identify the particular business for which each task was performed since, as Collins testified, virtually all of Mansur's affairs were related. The *Bush* estate was unusual because of its size, the bitter hostility which faced the executors, and the lengthy and complex litigation involved. *Id.* Collins testified Bonhiver's job was made more difficult by Mansur's frequent objections and because the transactions and business affairs involved were especially complex.

At trial, the conservatee called Jerome Rice who testified a January 1984 trip Bonhiver made to Florida was unnecessarily expensive. He told the court a paralegal should have gone. Bonhiver testified he spent just over one week in Florida, where he sorted through over 60 file cabinet sized boxes of documents, determined which appeared to be relevant to the Vogel and SunDial transactions and the various shopping centers, and packed the documents for shipment. Vogel had refused to bring all the documents to Minnesota and the attorneys agreed someone knowledgeable needed to sort them and select the essential documents for shipment.

Otis Godfrey, a district judge familiar with Bonhiver's work, testified Bonhiver's billing method and hourly rate were fair. He also stressed Bonhiver was very diligent in recreating complex business records. Attorney Thomas Bartsh, who

had worked with Bonhiver on several complex cases, testified the rates charged by Bonhiver, Buckmaster and Juve were reasonable. He assessed Bonhiver as very competent to handle complicated matters. The trial court's conclusion that the charged fees were reasonable is not clearly erroneous.

 Appellant also challenges the attorney fees charged by Collins and the firm in the amount of $96,029.51. Reasonable attorney's fees may be recovered for services performed for the estate. Minn.Stat. § 525.515(a) (1984). The trial court must consider the time and labor involved, the attorney's experience and knowledge, the complexity and novelty of the problems involved in the estate, the responsibility assumed and results obtained by the attorney, and the assets available to pay for the services. Minn.Stat. § 525.515(b).

Appellant again relies on Rice's testimony that the fees are excessive and that too much time was spent for the results obtained. Collins testified the fees were reasonable, that he met regularly with Sara Martin, a paralegal in his firm, and Bonhiver concerning the case and that he was confident there was no avoidable duplication of efforts. Collins also reviewed the work-product of Martin and Bonhiver. Resolution of the factual issues of reasonableness in this case obviously depended upon an evaluation of the credibility of the conflicting witnesses.

Appellant's reliance upon *In re Weisberg's Estate*, 242 Minn. 150, 64 N.W.2d 370 (1954), is misplaced. The trial court there reduced the attorney fees, in part because no unusual legal problems were involved, and the supreme court affirmed the reduction. The case actually supports the position of respondents, since it demonstrates the deference due the trial court's determination of the factual question of reasonable fees. The allowance of the attorney's fees in this case was not clearly erroneous.

2. The Collins firm seeks reversal of the trial court's disallowance of their claim for fees totaling $3,162.49. Collins testified that amount was not included in the final account and represented fees incurred in transferring the estate to the successor conservator and attorneys. The amount of time involved in informing the successors of the status of the pending matters and meeting with them was undisputed.

The trial court gave no reasons for the disallowance and none is evident from the record. Collins' testimony that the fees were fair and reasonable was also undisputed. In light of the record, it was clearly erroneous to deny the claim for $3,162.49.

### DECISION

The trial court properly allowed the conservator's fees. The trial court did not err in allowing attorney's fees. The trial court's disallowance, without reason, of the fees incurred in transferring the estate is erroneous where the testimony is undisputed.

Affirmed in part and reversed in part.