In the Matter of the GUARDIANSHIP and Conservatorship OF Harold F. DOYLE, Ward.

No. A09–452.

Court of Appeals of Minnesota.

Feb. 2, 2010.

---

3. The presumptive sentences discussed here are based on Holmes' criminal history score.

Thomas C. Pearson, Gammello, Qualley & Pearson, PLLC, Baxter, MN, for appellants Peterson.

Denise Fischer, Duluth, MN, pro se respondent.

Considered and decided by TOUSSAINT, Presiding Judge; MINGE, Judge; and LARKIN, Judge.

## OPINION

MINGE, Judge.

Appellant guardians and conservators of ward Harold F. Doyle challenge the district court's order disallowing their accounts and certain fees and expenses paid to them out of the ward's estate. We affirm in part, reverse in part, and remand.

## FACTS

In July 2004, the district court in its

capacity as the probate court[1] appointed appellants Paul Peterson and H. Frances Peterson as guardians and conservators of Harold Doyle, a senior citizen who resides in a group home. Doyle was not indigent. Acting as conservators, appellants charged various expenses to and paid their claimed fees out of Doyle's estate. Between 2005 and 2008, appellants filed four annual accounts with the district court administrator, detailing their fees and expenses. The fees and expenses in the four accounts totaled $26,514.74. Initially, appellants did not move for approval of their accounts, and no action was taken.

In April 2008, the district court ordered appellants to show cause as to why the fees and the annual accounts were not excessive. In October 2008, a hearing was held on the show-cause order. At the outset, the district court explained that the purpose of the hearing was to address the order to show cause. Appellants and their counsel were present. The ward was unrepresented. An attorney appeared at the hearing on behalf of the ward's nephew, apparently to facilitate the appointment of a relative of the ward to replace appellants as his conservator/guardian. This attorney raised no objections to appellants' accounts. Appellants testified, but were unable to answer many questions about their accounts, fees, and expenses, and reported that they did not have records that would enable them to reconstruct their work.

On December 30, 2008, the district court entered extensive findings of fact, conclusions of law, and a detailed order. In its findings, the district court summarized portions of the Service Fee Policy for Guardians and Conservators adopted by Aitkin County Health and Human Services (Service Fee Policy) and of the Standards of Practice adopted by the Minnesota Association for Guardianship and Conservatorship (Standards of Practice). The district court found that the billing records that appellants submitted were "extremely disorganized and inaccurate," refused to accept the four annual accounts, determined that the claimed fees and expenses were excessive and many specific items were not proper, required appellants to submit accurate and proper annual accounts, and directed appellants to repay $17,722.50. Although the district court provided detailed reasons for most of its determinations, the district court disallowed a lump sum of $5,000 as "excessive, unreasonable, and unnecessary." The district court set March 15, 2009, as the date by which "accurate and proper" accounts had to be submitted and disallowed fees and expenses repaid.

No judgment has been entered. Appellants have not requested reconsideration or amended findings, filed or submitted a petition for allowance of modified accounts, or requested that the district court allow comment on or reopen the record to address matters contained in its December 30, 2008 order. This appeal followed.

## ISSUES

1. Is the district court's December 30, 2008 order appealable?

2. Does the district court have authority to disallow fees and expenses of a guardian/conservator on its own initiative?

3. Did the district court err in relying on two documents that were not in the record: the Service Fee Policy and the Standards of Practice?

---

1. Because there is no longer a separate probate court system in Minnesota and district courts exercise all the functions of the probate court, the term "district court" will be used interchangeably for "probate court."

4. Did the district court abuse its discretion in disallowing specific fees and in disallowing $5,000 generally?

## ANALYSIS

### I.

■ At the outset, we address on our own initiative the question of whether the district court's order is appealable. Generally, appeals may only be taken from a final judgment. Minn. R. Civ.App. P. 103.03(a). However, the rules also permit appeals from orders or decisions that by statute are appealable. *Id.* at 103.03(j). The probate code provides that appeals may be taken from

> (9) an order allowing, or refusing to allow, an account of a representative or any part of it when the amount in controversy exceeds $100; ... [or]

> (15) an order made directing, or refusing to direct, the payment of representative's fees ..., and in such case the representative ... shall ... be deemed an aggrieved party and entitled to appeal.

Minn.Stat. § 525.71(a) (2008). A guardian or conservator is a "representative." Minn.Stat. § 525.80 (2008).

Here, appellants had been serving as guardians and conservators. The district court unequivocally disallowed $17,722.50 in fees and charges including the following: a $250–per–month base fee, a $50–per–hour rate for guardian/conservator services, $7,472.50 for a special accounting, and $5,000 as a lump sum. This action has a final-determination character. However, at the same time, the district court concluded that "$3,819.13 billed ... in the 4th Annual Account [was] disallowed until a complete set of billing records are provided to the court by [appellants]" and ordered appellants to resubmit their accounts, which arguably allowed the possibility that the district court's consideration of the remaining fees would be reconsidered based on resubmitted accounts.

Based on the final nature of the district court rulings disallowing more than $100 of certain of appellants' fees and expenditures, we conclude that the district court's December 30, 2008 order is appealable. Accordingly, we proceed to consider the objections raised by appellants to the December 30, 2008 order. In engaging in this review, we recognize that the district court had not completed its consideration of significant aspects of the proceeding.[2]

### II.

■ The first issue as raised by appellants is whether the district court has "jurisdiction" to disallow their accounts and fees when no party has objected to appellants' accounts or requested the repayment of fees. Appellants' arguments deal less with jurisdiction and more with the district court's sua sponte decision to disallow fees and expenses in an uncontested proceed-

---

2. We recognize that persons wishing to challenge certain probate determinations proceed at their risk if they do not appeal an order which they deem interim but which this court determines is appealable. In such situations, failure to timely appeal will result in loss of the right to obtain appellate review. *See In re Estate of LeBrun*, 458 N.W.2d 139, 143 (Minn. App.1990) (refusing to consider the district court's interlocutory order for maintenance, an appealable order under Minn.Stat. § 525.71(6), because the time for appeal of that order had expired). We also recognize that this matter has been briefed by appellants and considered by this court and that further delay and expense in the consideration of the issues should be avoided. *See* Minn. R. Civ.App. P. 105.01 (allowing discretionary review in the interest of justice); *Gordon v. Microsoft Corp.*, 645 N.W.2d 393, 398 (Minn.2002) (interpreting rule 105.01).

ing.[3] A probate court has the power "to take all ... action necessary and proper to administer justice in the matters which come before it." Minn.Stat. § 524.1–302(b) (2008). "[P]rotecting and preserving the property of the ward is the real purpose of guardianship." *In re Guardianship of Schober,* 303 Minn. 226, 229, 226 N.W.2d 895, 898 (1975). In order to ensure that this purpose is fulfilled, probate courts are given jurisdiction over persons under guardianship, including jurisdiction over the management and disposition of their property and the care and protection of their estates. *Snicker v. Byers,* 176 Minn. 541, 544–45, 224 N.W. 152, 154 (1929).

The ward's best interests must be the determinative factor in guiding the court when making any choice on the ward's behalf. *Rickel v. Peck,* 211 Minn. 576, 583, 2 N.W.2d 140, 144 (1942). When a district court determines that "a guardian or conservator has rendered necessary services or has incurred necessary expenses for the benefit of the ward," it "may order reimbursement or compensation to be paid from the estate" of the ward. Minn.Stat. § 524.5–502(c) (2008).[4] The allowance of fees is a matter of discretion for the district court. *In re Estate of Baumgartner,* 274 Minn. 337, 346, 144 N.W.2d 574, 580 (1966). "The courts have a duty to prevent dissipation of estates through the allowance of exorbitant fees to those who administer them." *In re Estate of Weisberg,* 242 Minn. 150, 152, 64 N.W.2d 370, 372 (1954).

Appellants rely on *In re Conservatorship/Guardianship of Robinson,* in which this court stated that "[t]he matters determined in an action or judicial proceeding are the questions decided in determining the issues raised by the conflicting claims of the parties," and that a court has "jurisdiction to determine only the questions thus raised." 409 N.W.2d 269, 271 (Minn. App.1987) (quoting *In re Enger's Will,* 225 Minn. 229, 238–39, 30 N.W.2d 694, 701 (1948)). But in *Robinson,* we also stated that the matters over which a court has "jurisdiction" in an accounting "include the transactions set forth in the account." *Id.* (quoting *Enger's Will,* 225 Minn. at 238–39, 30 N.W.2d at 701).

Appellants' argument would relegate the judicial role in reviewing and approving accounts to a rubber-stamp function. The very purpose of the hearing in this case was for appellants to show cause why the fees in their accounts should be allowed. While no one appeared to object to appellants' accounts at the hearing, there was no one present at the hearing who represented Doyle. To ensure that Doyle's estate was protected and to serve Doyle's best interests, the district court had a responsibility to review the fees that appellants charged Doyle's estate. Accordingly, we conclude that the

3. For an analysis of the distinction between jurisdiction and procedural tools that may limit judicial consideration, see *In re Commitment of Giem,* 742 N.W.2d 422, 427–28 (Minn.2007) (considering subject matter jurisdiction and non-jurisdictional deadlines).

4. We note that another subsection of the statute requires "reimbursement or compensation if [requested] ... and the guardian or conservator was nominated by the court ... because no suitable relative or other person was available to provide guardianship or protective proceeding services necessary to prevent maltreatment...." Minn.Stat. § 524.5–502(d) (2008). Because the record is not clear regarding the circumstances incident to appellants' appointment, because the district court does not distinguish between these provisions, and because the differences between the subparts do not appear to affect the results in this proceeding, we do not further consider the question of the proper subsection.

district court was authorized to disallow fees and expenses in appellants' accounts, and we note the district court's care and attention to detail in undertaking its task.

### III.

The next issue is whether the district court erred in considering sua sponte the Service Fee Policy setting the appropriate fees to be charged when a guardian represents an indigent ward in Aitkin County and the Standards of Practice promulgated by the Minnesota Association of Guardianship and Conservatorship. Generally, district courts do not gather their own evidence. *See Claesgens v. Animal Rescue League, Inc.,* 173 Minn. 61, 63, 216 N.W. 535, 536 (1927). But a district court may take judicial notice of adjudicative and legislative facts. Minn. R. Evid. 201. The rule provides that:

(a) **Scope of rule.** This rule governs only judicial notice of adjudicative facts in civil cases.[5]

(b) **Kinds of facts.** A judicially noticed [adjudicative] fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) **When discretionary.** A court may take judicial notice, whether requested or not.

(d) **When mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e) **Opportunity to be heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(f) **Time of taking notice.** Judicial notice may be taken at any stage of the proceeding.

(g) **Instructing jury.** The court shall instruct the jury to accept as conclusive any fact judicially noticed.

*Id.*

Although the rules do not define the phrase adjudicative facts, the committee comment does:

Adjudicative facts generally are the type of facts decided by juries. Facts about the parties, their activities, properties, motives, and intent, the facts that give rise to the controversy, are adjudicative facts.

Minn. R. Evid. 201 1989 comm. cmt.; *see also* Kenneth C. Davis, *An Approach to Problems of Evidence in the Administrative Process,* 55 Harv. L. Rev. 364, 402 (1942) (defining adjudicative facts as "facts concerning immediate parties—what the parties did, what the circumstances were, what the background conditions were").

The process for taking judicial notice of *legislative* facts is not addressed by rule, nor is the term defined. *See* Minn. R. Evid. 201 1989 comm. cmt. One court offered this definition: "Legislative facts ... do not relate specifically to the activities or characteristics of the litigants. A court generally relies upon legislative facts

---

5. Probate proceedings are sufficiently "civil" in nature to be subject to the rules of evidence. *See Payne v. Lee,* 222 Minn. 269, 278, 24 N.W.2d 259, 265 (1946) (stating that "[w]here judicial functions are involved in probate proceedings, a probate judge, like a judge in any other civil proceeding, is subject to disqualification"); *see also* Minn. R. Evid. 1101 (stating that the rules of evidence apply to "all actions and proceedings in the courts of this state" with certain exceptions that do not include probate proceedings).

when it purports to develop a particular law or policy and thus considers material wholly unrelated to the activities of the parties." *United States v. Gould,* 536 F.2d 216, 220 (8th Cir.1976); *see also* Davis, *supra,* at 403, 406 (defining legislative facts as those that inform a court's judgment about matters of law and policy, and asserting that the restrictions on a court's ability to take notice of adjudicative facts are "wholly inappropriate for legislative facts"). Unlike adjudicative facts, "[l]egislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally." *Gould,* 536 F.2d at 220. Legislative facts are "generally confined to social and socioeconomic data on which courts may rely in considering expediency and public policy." *Faribault–Martin–Watonwan Human Servs. ex rel. Jacobson v. Jacobson,* 363 N.W.2d 342, 345 (Minn.App.1985).

█ It is an everyday practice of courts to take notice of legal materials such as statutes, caselaw, regulations, ordinances, treatises, and law review articles. Indeed, judicial notice must be taken of certain types of rules or regulations, such as those that were created pursuant to an agency's statutory authority. *See Bunten v. E. Minn. Power Co.,* 178 Minn. 604, 612, 228 N.W. 332, 335 (1929) (ruling that it was "the duty of the court to take judicial notice of" rules and regulations adopted by a state railroad and warehouse commission pursuant to its statutory authority).

### A. Service Fee Policy

█ Here, the district court order included findings that summarized provisions of the Service Fee Policy and the Standards of Practice. Although the district court took notice of these provisions

after the hearing, the actual documents do not appear in the record. Appellants assert that they were not aware of the district court's consideration of these materials until they received its decision. The Service Fee Policy represents a position taken by Aitkin County regarding the appropriate fees to be charged when a guardian represents an *indigent* ward, and the policy is referenced in the statutes. Minn.Stat. § 524.5–502. The statutory reference is significant because it puts parties on notice that such a policy exists and because the policy is the official action of a governmental body adopted incident to statute. As an official government policy, we conclude that it was not error for the district court to take notice of the Service Fee Policy.

█ However, as stated previously, the Service Fee Policy applies to conservators and guardians of *indigent* wards. Because the record indicates that Doyle was not indigent, automatic application of the Service Fee Policy to fees for Doyle's estate would be error. It is not clear whether the district court concluded that the Service Fee Policy governed appellants' fees or was simply persuasive. Regardless, the Service Fee Policy was prominently summarized, and its $35–per–hour cap on fees was imposed. We conclude that it was error for the district court not to give appellants the opportunity to comment on the appropriateness of applying the policy for indigent wards to fees for a non-indigent ward and not to specify its significance to the decision.[6]

### B. Standards of Practice

█ In contrast to the Service Fee Policy, the Standards of Practice are pub-

---

**6.** It does not appear that appellants requested that the district court afford them an opportunity to challenge the Service Fee Policy. We

do not reach the question of whether such a request is a prerequisite to raising this claim of error on appeal.

lished by a not-for-profit organization with members from three states—Minnesota, North Dakota, and Wisconsin.[7] When industry custom or practice is in dispute, in the absence of evidence, it should not be the subject of judicial notice. *Nadherny v. Roseland Prop. Co.*, 390 F.3d 44, 51–52 (1st Cir.2004). Although the existence of the Standards of Practice does not appear to be subject to any reasonable question, its function in setting standards for compensation, recordkeeping, and billing for guardians and conservators directly bears on the ultimate factual issue in this proceeding. Because they are not uniquely applicable to this case, the Standards of Practice are not appropriately classified as adjudicative facts under rule 201. Furthermore, because they do not constitute established truths or data or establish part of the larger framework for judicial decision-making in our society, they are not legislative facts. Finally, because they are akin to an expert opinion by a non-official organization about the Standards of Practice, it was error to take judicial notice of them.

Additionally, regardless of the characterization of the Standards of Practice, the Standards should have been made part of the record and appellants should have been afforded the opportunity to address them as they were central to the district court's decision. *See State v. Friberg*, 435 N.W.2d 509, 514 (Minn.1989) (stating that, while the district court's judicial notice that its calendar was crowded was not erroneous because it was supported by the record and unchallenged by either party, "it would have been a better practice for the [district] court to specifically state its intention to take judicial notice of certain facts"); 2 Richard J. Pierce, Jr., *Administrative Law Treatise*

§ 10.6, at 959 (5th ed. 2010) (stating that more procedural protection is needed for "facts that importantly affect the decision than for critical or background facts"). It was error for the district court to consider the Standards of Practice in the manner that it did.

### C. Conclusion

We remand with instructions that the district court: (1) include the Standards of Practice and Service Fee Policy in the record; (2) afford appellants an opportunity to challenge the persuasiveness of the Standards of Practice and the Service Fee Policy and to introduce other relevant evidence of Standards of Practice and fees; and (3) in its discretion, otherwise reopen the record.

### IV.

The final issue raised in this appeal is whether the district court improperly disallowed certain claims for compensation and expenses. Because we are reversing and remanding on the judicial-notice issue, appellants will have an opportunity to address the application of the Service Fee Policy and the Standards of Practice to the various accounts, fees, and expenses disallowed. Although we do not prejudge the final determination of the district court regarding these matters on remand, we recognize that the district court has provided a detailed determination and that appellants have briefed and argued and that this court has considered certain specifics in this appeal. Accordingly, we will generally address certain disallowance determinations.

As previously stated, the allowance of fees is a matter of discretion for the district court. *Baumgartner*, 274

---

7. The Minnesota Association for Guardianship and Conservatorship (MAGiC), http://www.minnesotaguardianship.org/ (last visited January 15, 2010).

Minn. at 346, 144 N.W.2d at 580. The district court's findings will not be disturbed unless this court, after reviewing the evidence, "is left with the definite and firm conviction that a mistake has been committed." *In re Estate of Congdon*, 309 N.W.2d 261, 266 n. 7 (Minn.1981) (quotation omitted). A district court's decision as to the reasonable value of a conservator's or guardian's services is a question of fact that will not be set aside unless clearly erroneous. *In re Conservatorship of Mansur*, 367 N.W.2d 550, 552 (Minn.App.1985), *review denied* (Minn. July 11, 1985).

■ Regardless of the factors, the allowance of fees depends on the district court's determination that the guardians/conservators rendered necessary services or incurred necessary expenses for the benefit of the ward. Minn.Stat. § 524.5–502(c). The burden of providing evidence to support fee requests lies with the guardian/conservator. *See Butt v. Schmidt*, 747 N.W.2d 566, 576 (Minn.2008) (stating that a party in exclusive possession of evidence has the burden to produce that evidence). In determining the reasonableness and documentation of fees for guardians and conservators, we note that the district court's task is difficult. Other than such material as the Service Fee Policy and Standards of Practice, there apparently is a paucity of guidance on this question in this state.

However, the district court's task here is similar to ruling on attorney fees in estate matters. In that setting, the probate statutes set forth the basic rule that fees must be "just and reasonable" and establish a five-factor guide:

(1) the time and labor required;

(2) the experience and knowledge of the attorney;

(3) the complexity and novelty of problems involved;

(4) the extent of the responsibilities assumed and the results obtained; and

(5) the sufficiency of assets properly available to pay for the services.

Minn.Stat. § 525.515(b) (2008).

### A. Generally

Appellants contend that the district court abused its discretion in refusing to allow a large portion of their fees. The grounds for the district court's determinations are primarily lack of organization, inaccuracies, lack of specificity, errors, irregularities, unacceptable hourly rates and monthly flat fees, generally excessive fees, and the lack of any billing statements in the record for appellants' fourth annual account. After reviewing the record, including appellants' accounts and billing statements, we agree with the district court that appellants' billings contain numerous irregularities. Certain charges do not include any indication of the work that appellants performed on Doyle's behalf. For example, a one-hour charge contains only the description "We need to move Harold." Another charge is for 21 hours over a two-week timeframe and is described only as "Personal Care." Many charges include only vague references to dates, and some include no dates at all. In some billing statements, charges for hours or mileage are calculated at rates other than those stated in the statements. If after hearing further from appellants regarding the Standards of Practice, Service Fee Policy, and such other matters as the district court deems timely and relevant, the district court determines that the accounts are inaccurate and disorganized and fees improper, we conclude that it would not be an abuse of discretion for the district court to disallow such fees and accounts.

### B. Monthly Fee

Appellants also argue that the district court abused its discretion in disallowing appellants' monthly "base fees." Appellants billed Doyle's estate $250 per month for 21 months for what appellants described as "de minimis charges." At appellants' charged rate of $50 per hour, these "base fees" represent five hours per month of work for tasks that appellants characterize as too small to itemize. The district court noted that several months' billing statements listed only the $250 fee for that month with no indication that appellants had any contact with Doyle or performed any work on Doyle's behalf during that month. However, appellants' billing statements include numerous and significant charges for phone calls and other tasks that appellants simultaneously characterize as too small to itemize.

Given appellants' failure to demonstrate that their "base fees" represent any work they performed for Doyle or that such work cannot properly be itemized, we conclude that the district court's refusal to allow these fees is not necessarily an abuse of discretion. However, we also note that the Service Fee Policy estimates that only one or two hours per month is appropriate for indigent wards. To the extent that the reasonableness of this disallowance is affected by matters submitted and arguments made on remand, the district court shall modify its determination.

### C. Hourly Fee

Next, appellants challenge the district court's determination that they could not charge more than $35 per hour for their services, rather than the $50 per hour they claimed. A district court's decision as to the reasonable value of a conservator's or guardian's services is a factual determination that will not be set aside unless clearly erroneous. *Mansur,* 367 N.W.2d at 552. Clear error exists when the district court's findings are not supported by the evidence. *Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 102 (Minn.1999). As previously discussed, the statute provides that "[i]n determining compensation for a guardian or conservator of an *indigent* person, the court shall consider a fee schedule recommended by the Board of County Commissioners." Minn.Stat. § 524.5–502(c) (emphasis added).

In determining appellants' reasonable rate to be $35, the district court appears to have relied on the Service Fee Policy for indigent wards. Doyle is not indigent and the relevance of the policy is an issue on remand. In addition, we recognize that appellants' compensation should include consideration of their expertise and knowledge and the difficulty of the work involved. *See* Minn.Stat. § 525.515(b). We note that not all services provided to the ward are necessarily of the same character. Some services may require more expertise than others. After consideration of the record and arguments on remand, the district court has discretion to redetermine the proper rate(s) of compensation.

### D. Accounting Charges

Another charge disallowed by the district court was $7,472.50 for "Special Accounting." In making this decision, the district court stated that it could find no evidence that, during the time period for which "Special Accounting" fees were charged, there were any special accountings or "any circumstances that would warrant these excessive and unnecessary fees." But in their billing statements, appellants state that they spent a significant amount of time reconciling their accounts with the district court during late 2006 and early 2007. The record shows that appellants submitted two amended versions of

their first annual accounts to the district court at this time. Also, the district court referenced the provision of the Standards of Practice that precludes compensation for a guardian's and conservator's book-keeping work. We conclude that on remand appellants are to be afforded an opportunity to introduce evidence regarding the propriety of charging for accounting services and to establish the need for the "Special Accounting" and that the district court shall reconsider whether "Special Accounting" fees were reasonable and necessary.

*E. Flat Sum*

■ Finally, appellants argue that the district court erred in disallowing a flat sum of $5,000. The findings and conclusions of a district court must be "detailed, specific and sufficient enough to enable meaningful review by this court." *Bliss v. Bliss*, 493 N.W.2d 583, 590 (Minn.App. 1992), *review denied* (Minn. Feb. 12, 1993). Appellants assert that this generalized reduction prevents them from determining what precisely has been rejected and properly preparing revised final accounts for district court review. In disallowing this $5,000 amount, the district court stated only that it found "numerous billing entries" to be "excessive, unreasonable, and unnecessary for services and expenses as described in the above Findings of Fact."

As described above, appellants' accounts and billing statements contain numerous irregularities. We do not conclude that those shortcomings do not justify the $5,000 reduction. But the district court does not state specifically which of appellants' numerous itemized charges it is disallowing, nor is it clear from the record which of appellants' entries comprise this $5,000 amount. While the district court found appellants' billings to be "disorganized and inaccurate," it is not possible for this reviewing court to determine whether the district court could reasonably be more specific based on the record before it or whether a generalized adjustment was the only practical way for the district court to proceed. We therefore reverse and remand this $5,000 disallowance with instructions to clarify the relationship of this adjustment to other disallowed or criticized charges and otherwise allocate the disallowed fees or to make findings that such specificity is not possible.

**DECISION**

We conclude that appellants may appeal from the December 30, 2008 order and that the district court had authority to review and disallow on its own initiative accounts that were not proper, to disallow fees and expenses, and to order the payment of those amounts to the estate of the ward. We also recognize the discretion of the district court to take such action. However, we conclude the district court erred in relying on documents that were not part of the record, in rejecting accounts and disallowing certain fees and expenses in part on the basis of those documents, and in disallowing the $5,000 lump sum without findings allocating that disallowed amount or the extent to which allocation is not feasible.

On remand, the district court may, in its discretion, reopen the record for additional evidence regarding appellants' fees, services, and accounting. In addition, the district court shall complete its work in receiving and acting on such accounts as it orders refiled and order such additional accountings and such repayment of fees and expenses as it determines proper.[8]

8. As previously discussed, at the time of this appeal, the district court had not completed its consideration of significant aspects of this proceeding. The record does not disclose any

In closing, this reviewing court observes that the district court in this proceeding carefully reviewed accounts and fees to insure that the estate of an incapacitated person was not improperly depleted. We commend the district court for its diligent work and appreciate the significant time it spent reviewing accounts and billing statements.

**Affirmed in part, reversed in part, and remanded.**

motion by appellants to obtain district court consideration of the issues raised on appeal. Possibly such a request of the district court would have resolved issues that were raised in this appeal.