*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1546**

In re the Conservatorship of:
Merritt Elmer Johnson, Protected Person

**Filed June 6, 2016
Affirmed
Klaphake, Judge**[*]

Hennepin County District Court
File No. 27-GC-PR-13-452

Matthew J. Schaap, Robert B. Bauer, Dougherty, Molenda, Solfest, Hills & Bauer P.A., Apple Valley, Minnesota (for appellant Nesvig)

Dennis J. Dietzler, Dietzler Law Office, Edina, Minnesota (for respondent Leonidas)

Considered and decided by Jesson, Presiding Judge; Kirk, Judge; and Klaphake, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KLAPHAKE**, Judge

In this dispute regarding the fees to be awarded to a conservator, appellant, the emergency conservator's attorney, argues that the district court (1) erred in denying attorney fees for services that duplicated services performed by the emergency conservator;

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

(2) failed to apply the correct test when addressing whether to award the fees in question; and (3) failed to make adequate findings of fact explaining why certain fees were denied. Because the district court correctly applied the law and the findings are sufficient to permit appellate review, we affirm.

## DECISION

An attorney who provides "necessary services with regard to the appointment of a guardian or conservator" or "the administration of the protected person's estate or personal affairs . . . shall be entitled to compensation from the protected person's estate." Minn. Stat. § 524.5-502(b) (2014). We review a district court's award of attorney fees for an abuse of discretion, and the reasonableness of fees is a fact question the district court's resolution of which we will not set aside unless clearly erroneous. *In re Conservatorship of Mansur,* 367 N.W.2d 550, 552 (Minn. App. 1985), *review denied* (Minn. July 11, 1985).

In September 2013, the district court appointed Mary Johnson emergency conservator of her brother-in-law, 93-year-old Merritt Johnson, who had been swindled out of about $40,000. Mary Johnson hired appellant-attorney R. Gordon Nesvig to represent her in the conservatorship proceeding and assist her in protecting Merritt Johnson's assets. In January 2014, the district court added respondent Lisa Leonidas as emergency co-conservator.

On April 10, 2014, the emergency conservatorship ended, and Leonidas became the sole general conservator. Nesvig filed a final account for the emergency conservatorship in the district court, which included $35,356.71 in attorney fees billed at the rate of $240 per hour. Leonidas submitted a letter to the district court objecting to the amount of

2

attorney fees. And an account technician for the Minnesota Judicial Branch's Conservator Account Auditing Program (CAAP) filed an audit report. The report questioned the reasonableness of 43.25 hours of services billed at $240 per hour, which totaled $10,380, for noncourt related services performed with Mary Johnson. The questioned services included going to the bank to open and close accounts, going to Merritt Johnson's residence with Mary Johnson to explain court procedure, and meeting with Mary Johnson to sort mail and pay bills.

Following an evidentiary hearing, a district court referee recommended reducing Nesvig's attorney fees by $9,192, and the district court confirmed the referee's decision. Nesvig filed a notice of review of the account order, and the district court affirmed the account order, stating:

> [The referee] based his reduction in fees on the duplication of services between the attorney and the conservator, and the fact that these administrative tasks "should have been charged at a conservator rate rather than an attorney rate." In his Order and during the trial on the matter, only the most egregious examples of duplication were addressed (i.e. "playing the court conservatorship video for the conservator, opening a checking account, writing out checks.") However, nothing in the statutory or common law suggests the referee must make specific reference to each line item and amount in determining the overall reasonableness of professional fees. It was within [the referee's] discretion to deny all the professional fees charged to the protected person's estate. His reasonable reduction of $9,192 for clearly duplicative fees out of a total of $35,356.71 charged by Mr. Nesvig to the estate was warranted.

Absent a prior agreement, courts consider the following factors when determining whether the attorney fees are fair and reasonable:

> (1)    the time and labor required;
> (2)    the experience and knowledge of the attorney;
> (3)    the complexity and novelty of problems involved;
> (4)    the extent of the responsibilities assumed and the results obtained; and
> (5)    the sufficiency of assets properly available to pay for the services.

Minn. Stat. § 525.515(b) (2014); *see Mansur*, 367 N.W.2d at 553 (stating that these factors apply to conservatorship cases.).

***Time and Labor Required***

Nesvig argues that "[s]ignificant time and labor were required to prevent Merritt Johnson from transferring his assets to con artists" and that Mary Johnson needed "Nesvig to provide professional judgment and legal guidance." He testified that Mary Johnson was unsophisticated and a cautious conservator who relied significantly on Nesvig to provide advice regarding most conservatorship matters.

Nesvig testified that Mary Johnson asked him to come to the bank with her to talk to a banker about what could be done to stop Merritt Johnson's spending. The banker suggested a conservatorship, which he and Mary Johnson had already been contemplating. The bank closed Merritt Johnson's accounts because it was concerned about his spending and issued two checks, each for over $30,000. The bank intended to give the checks to Merritt Johnson, so Nesvig again accompanied Mary Johnson to the bank. The bank, however, refused to give the checks to Mary Johnson because she had not yet been appointed emergency conservator and mailed them to Merritt Johnson. Mary Johnson

4

failed to intercept the checks and Merritt Johnson received them, so Nesvig and Mary Johnson called the bank to try to get the bank to stop payment on the checks. A banker suggested that they bring Merritt Johnson to the bank, so Nesvig accompanied Merritt Johnson and Mary Johnson to the bank, and a banker persuaded Merritt Johnson to turn over the checks to Mary Johnson.

Nesvig testified as follows about helping Mary Johnson with paying bills:

> I have learned from years of experience it saves all kinds of time in the long run if I keep it up on a monthly basis. And now with the check system you don't always get copies of the checks back. They are processed electronically so we always try to keep copies of the check and the bill as we did it, register it in the check register so that when it came time to do the final account it was far, far easier than if we had not done it that way. Also, Mary did not have a copy machine.

Four letters from Nesvig to Leonidas and one from Nesvig to Leonidas's attorney about bills that Nesvig had assisted Mary Johnson with were admitted into evidence. The bills included a payment due for phone service; an offer of renewal of Merritt Johnson's auto insurance policy, which Nesvig recommended not be renewed for liability reasons; and an offer to renew Merritt Johnson's AAA membership, which Nesvig noted was optional.

Regarding visiting Merritt Johnson with Mary Johnson, Nesvig testified that the visit occurred before Mary Johnson was appointed emergency conservator and before Merritt Johnson was represented by a court-appointed attorney and that the visit was suggested by the district court referee. But on cross-examination, Nesvig admitted that he did not know if the referee wanted him to accompany Mary Johnson to talk to Merritt Johnson about the conservatorship.

5

Although significant time and labor and an attorney's expertise may have been required to protect Merritt Johnson's estate, Nesvig does not explain why an attorney's expertise was needed to perform the services for which fees were denied. Nesvig's own testimony shows that an attorney's expertise was not required to help Mary Johnson by accompanying her to the bank, overseeing routine bill paying, and helping explain the conservatorship to Merritt Johnson. To the extent needed, a conservator could have assisted Mary Johnson with such tasks, and the record contains evidence that the standard rates charged by conservators range from $20 to $30 per hour.

### *Attorney's Knowledge and Experience*

Nesvig argues that he has over 40 years of experience in conservatorship, tax, and criminal cases and that his rate of $240 per hour is "exceedingly reasonable." But Nesvig's billing rate for necessary legal services was not contested. The district court found that services provided to assist Mary Johnson with administrative tasks should have been billed at the rate charged by conservators.

### *Complexity and Novelty of Problems Involved*

Although there was evidence that administration of Merritt Johnson's estate was complex due to his vulnerability to con artists, the record does not show that the denied fees were related to the complex issues. Nesvig cites intercepting and reviewing Merritt Johnson's mail as a complexity. But routine bills and correspondence could have been screened out by a conservator and did not require Nesvig's expertise.

*Extent of Responsibilities Assumed and Results Obtained*

Nesvig argues that the outcome of his efforts was completely successful because Merritt Johnson did not lose any additional assets to con artists after Nesvig became involved in the case. Although Nesvig successfully protected Merritt Johnson's estate, it was not necessary for Nesvig to perform clerical or administrative tasks. Again, such services could have been provided by a conservator at a lower billing rate.

*Sufficiency of Assets to pay for Services*

It is not contested that Merritt's Johnson's assets were sufficient to pay the amount billed by Nesvig.

*Reasonableness of Fees*

Nesvig argues that the district court acknowledged the five-factor test but ignored it. A district court abuses its discretion when it fails to consider required factors when awarding attorney fees. *Miller*, 642 N.W.2d at 77. And when the reasonableness of fees is challenged, the district court must explain the reasons for the fee award. *Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 629 (Minn. 1988). In protection cases, a district court has a responsibility to review carefully the detail of fees charged to the estate. *In re Guardianship of Doyle*, 778 N.W.2d 342, 347-48 (Minn. App. 2010).

Nesvig argues that the findings were inadequate to explain the lump-sum denial of fees. The district court's denial of $9,192 represents 38.3 hours of Nesvig's time. The district court explained its reasons for denying fees for performing administrative tasks. Although the district court's findings did not address line-item amounts, the CAAP report questioned 43 hours of Nesvig's time, and the record evidence shows that an attorney's

7

expertise was not required to perform the questioned services.  We, therefore, conclude that the district court did not abuse its discretion in its denial of fees.

**Affirmed.**